## THE ALPENA.

*(District Court, N. D. Illinois. July 15, 1881.)*

1. LIMITATION OF LIABILITY—PRACTICE—LOSSES OCCURRING ON DISTINCT TRIPS —CARGO—REV. ST. §§ 4283, 4284, AND 4285—ADMIRALTY RULES 54, 55, 56, AND 57.

The steamer Alpena, while on a voyage from Grand Haven, in the state of Michigan, to Chicago, in the state of Illinois, foundered and sunk with all her cargo, passengers, etc., on board. Soon after, her owner filed a petition in this court, under sections 4283, 4284, and 4285 of the Revised Statutes, which provide for the limitation of an owner's liability, etc., praying that upon complying with the requirements of the statute he might be exonerated from any liability not therein provided for, for loss of goods and for damages in consequence of loss of life on this last voyage, and also for damages alleged to have been sustained by a schooner in a collision with the steamer on a trip made some weeks previous. Upon filing this petition, an order was entered directing the petitioner to convey all its rights, etc., in what remained of her and to freight pending at the time of her loss, to a trustee, following the provisions of the statute. Upon being informed that this had been done, the court ordered a monition to issue citing all persons having claims for damages against either the steamer or the company, as her owner, to appear and prove their claims. On or before the return-day of this monition a large number of claimants appeared specially and took exceptions, which resolve themselves into two questions: (1) Can the liability of the owner be limited under the statute as to any loss or damage except that occurring on the voyage last preceding the filing of his petition, or on the voyage in which the steamer was lost? and (2) whether, under Admiralty Rules 54, 55, 56, and 57, this court has jurisdiction in the premises when the proceedings instituted under the statute by such an owner are not preceded by a suit brought at the instance of one of the losers. As to the first question, the court *held* that an owner's liability can only be limited as to such loss or damage as occurs on the last voyage preceding the filing of the petition, or on the voyage in which the vessel is lost. As to the second question, the court *held, further,* that the admiralty rules referred to therein do not make the institution of such proceedings conditional upon the bringing of a prior suit by one or more of the losers.

2. REV. ST. §§ 4283, 4284, AND 4285—MEASURE OF LIABILITY.

It seems that, under the statute, the measure of such petitioning owner's liability is the value of the vessel immediately after such loss or damage.

3. ADMIRALTY RULES 54, 55, 56, AND 57—PRACTICE.

It seems that, if such owner fails to institute proceedings until after a suit has been brought by a loser, then he must commence them in the same district court as that in which such suit was brought.

In Admiralty. Petition for limitation of owner's liability, etc., under sections 4283, 4284, 4285, Rev. St.

*Cook & Upton*, for petitioner.

*Alfred Russell*, for claimants.

*W. H. Condon*, for schooner Stockbridge.

BLODGETT, D. J. In this case the Goodrich Transportation Company alleges that it is the sole owner of the steamer Alpena, her engines, tackle, apparel and furniture; that such steamer was a vessel of upwards of twenty tons burden, duly enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between ports and places in different states and territories upon the lakes and navigable waters connected therewith; that on the sixteenth day of October, 1880, upon the waters of Lake Michigan and within the admiralty and maritime jurisdiction of the United States, and while on a voyage from the port of Grand Haven, in the state of Michigan, to the port of Chicago, in the state of Illinois, with a cargo consisting of goods, wares, and merchandise, and passengers, said steamer Alpena, in a severe gale, foundered and sunk with all her said cargo, passengers, officers, and crew on board, without the fault or neglect of duty of any of said officers or crew; and that such foundering, loss of life and cargo, was occasioned without the design, neglect, privity, or knowledge of the petitioner, or any of its officers or agents; that said steamer was, when she entered upon said voyage, in good seaworthy condition, and properly officered, manned, and equipped; that said steamer, her engines, tackle, apparel, and furniture, except some of the upper portion of her cabin, her piano, a few cabin doors, two small boats, and a piece of her main deck with the capstan attached, lies sunk in the waters of Lake Michigan, as nearly as petitioner can ascertain, off or south of the town of Holland, in the state of Michigan.

The petitioner further states that the owners and consignees of goods on board said steamer were very numerous, and the petitioner has reason to believe that numerous suits may be brought by the owners of said cargo against the petitioner, as owner of said steamer, for the loss of such cargo, and also that suits will be brought against

petitioner to recover damages occasioned by the loss of the lives of the passengers and crew of said steamer, and that the aggregate of the claims for said losses will greatly exceed the value of petitioner's interest in said vessel.

It is further alleged that a libel *in personam* was filed in this court on the tenth day of November last against petitioner, by Louis Hutt, as owner of the schooner Stockbridge, to recover damages alleged to have been sustained by said Hutt by reason of a collision between said schooner and said steamer on the tenth day of September, 1880, which suit is now pending.

On the filing of this petition an order was entered that petitioner convey all its right, title, and interest to whatever remained of said steamer, her engines, boiler, machinery, tackle, boats, apparel, and furniture, and freight pending at the time of the loss of said steamer, to a trustee named in said order, for the use and benefit of any and all persons having any claims against said steamer, or said company as the owner thereof. And it having been subsequently reported to the court that such conveyance had been duly made, a monition was by order of the court issued against all persons claiming any damage against said steamer, or the owners thereof, for any loss, destruction, or injury, citing them to appear and make due proof of their claims, etc.

On or before the return-day of this monition, a large number of claimants appeared specially, "not submitting to the jurisdiction of the court, but protesting against the same solely for the purpose of objecting to the jurisdiction of the court," and excepted to the sufficiency of the petition, and to the jurisdiction of the court in the premises. These exceptions, which are twelve in number, resolve themselves practically into two questions:

(1) Can the liability of the owner of the steamer be limited, under the law, to any loss or damage, except that occurring on the last voyage, or the voyage in which the steamer was lost? (2) Does the petition show sufficient facts to clothe this court with jurisdiction to apportion the value of the owner's interest among the several persons who suffered damage on the voyage in which the steamer was sunk?

As to this first question, it was conceded on the argument that the steamer was during the season of 1880, up to the time of her loss, engaged in running regular daily trips or voyages between the ports of Chicago and Grand Haven, on Lake Michigan, and that the collision between the steamer and the schooner Stockbridge occurred on a trip over a month prior to the commencement of the trip in which the steamer foundered and sunk.

I am clearly of opinion that the casualties or losses of different voyages cannot be aggregated or grouped together, say at the end of a season, or when a final catastrophe ensues, and all the losers be cited in to share what has been saved from shipwreck or other disaster, together with the pending freight, and have a decree entered exonerating the owners from personal liability. It seems to me that each voyage or trip, each separate journey, which the ship makes from one port to another, must be treated as a separate venture, involving its own particular hazards, losses, and earnings; and that when each such voyage is ended it is for the owner to decide whether the losses have been such as to make it expedient for him to invoke the protection given by this act of congress. If he does not decide to do this, but sends his ship upon a new voyage, he thereby concedes his personal liability for the damages incurred on the past voyage.

The owner, freighters, and passengers on any particular voyage may be said to have a common interest for that voyage. They may be compelled to contribute for jettisons made for the common safety under certain circumstances. But there is nothing in common between the freighters and passengers of different voyages. Each shipper or passenger may perhaps be held to have had some personal knowledge or information as to the seaworthiness of the ship, or the skill of her officers or crew, on the voyage in which he was interested, and to have acted on that knowledge to such an extent as in some degree to affect his and the owner's relative rights; but no such knowledge can be predicated of any other voyage, and it would certainly seem to have been beyond the intended scope of this law, that after a series of losses happening on different trips or voyages, no one of which was of sufficient consequence to induce the owner to seek the benefits of this law, he can be allowed to combine them and obtain immunity from personal liability. The language as well as the evident reason of the statute shows that this proceeding can only be had for the purpose of apportioning the owner's interest between several persons who have suffered "losses on the same voyage." I am, therefore, of opinion that the petitioner cannot by this petition obtain relief as against the suit for collision with the schooner Stockbridge.

As to the second question, it is objected that under admiralty rules 54, 55, 56, and 57, promulgated by the supreme court for the purpose of prescribing and regulating the procedure under this law, the court cannot entertain a petition by the owner for an apportionment of his interest in the vessel among the several sufferers and for

a limitation of his liability until some suit has been commenced for a loss, destruction, damage, or injury sustained by one or more of such sufferers, and then such petition must be filed in the district court of the district where such suit has been commenced. In other words, the position of these claimants is that inasmuch as this suit for collision with the Stockbridge, now pending in this court, is not for a damage accruing on the final or last voyage of the steamer, that that suit does not aid or confer jurisdiction, and the petitioner not showing that any libel had been filed in this court or suit brought in this district prior to the filing of the petition, this court has no jurisdiction in the premises.

It must be conceded, I think, that if this court only has jurisdiction of this subject-matter and parties by virtue of the rules in question, then there is much force in the position of these respondents. But it seems to me that it was not the intention of congress to suspend the right of the ship-owner to invoke the provisions of this law until suits or libels *in personam* should be actually instituted against him. The language of the statute is:

"And the owner of the vessel * * * may take the appropriate proceedings in any court for the purpose of apportioning the sum for which the owner of the vessel may be liable among the parties entitled thereto."

Here is no intimation that the owner must wait until he has been sued before he can "take the appropriate proceedings in any court;" while from the nature of the owner's liability, and the scope of the relief furnished by this law, it would seem that proceedings should be taken while the testimony necessary to establish the facts which secure immunity to the owner is available. Rule 57 says:

"The said libel or petition shall be filed, and the said proceedings had, in any district court of the United States in which said ship or vessel may be libelled to answer for any such embezzlement, loss, destruction, damage, or injury; or if such ship or vessel be not libelled, then in the district court for any district in which the said owner or owners may be sued in that behalf."

There is an obvious convenience, if a libel has been filed or suit brought for any such loss, in requiring the owner to go into the same court to take the steps which shall limit his liability, because this brings all the claimants, both those whose who have sued and those who have not, together. But suppose libels filed or suits brought simultaneously in different courts against the same or different owners, which might often happen, which court, then, is to have jurisdiction of the proceedings to limit liability? All the authorities now, I think, concur in the conclusion that the measure of the ship-

owner's liability is the value of the ship immediately after the loss or damage complained of. If the loss occurs by the beaching of the vessel, it is her value as she lies upon the beach. If it occurs by the sinking of the vessel, it is her value and the value of her belongings as she lies sunken. Now, in order to save what is thus left for the benefit of shippers and the owner, it is necessary, in almost every conceivable case, that immediate steps be taken to sell and convert the property into money, to be held for those entitled to apportionment, and this can only be done by some appropriate proceeding in court without delay. What is available may be perishable, or need immediate care, and the owner, by acting without the direction or sanction of a court in that regard, might at least hazard, if he did not lose, his right to protection under the law. So, too, the vessel might be in condition to be repaired, and her value for the purpose of reparation would measure the owner's liability to his shippers. If he repairs before this value is properly ascertained by appropriate proceedings in some court, under this law, he runs the risk of losing the protection the law affords him.

It seems, therefore, quite satisfactory to my mind that the supreme court did not intend, by its rules, to say that no proceeding to apportion the share of each loser in the value of the vessel should be had until some one of the losers should have commenced a suit; but the court only intended to say that if the owner delayed such proceedings until a suit had been commenced, then he should commence such proceeding in the district court where such suit was commenced. But if the shippers whose property has been lost or damaged by a shipwreck or other disaster, to which the owner is not privy, do not see fit to commence suit at once, I can see no reason or principle in the law itself which shall compel the owner of a vessel to lie silent until, perhaps, his testimony may be lost, or it becomes either impossible or difficult to estimate the value of his interest in the vessel, and only ask the aid of the court when suit is begun against him, which may be any time before the bar of the statute of limitations.

In this case the remnants of this vessel, so far as recovered, are within the jurisdiction of this court; the freight pending has been paid to the trustee appointed. The sunken hull and machinery may not be within the territorial jurisdiction of the court, but the title, wherever they are, has been conveyed to the trustees.

I therefore conclude that this court has jurisdiction to entertain this proceeding, although no suit had been brought in this court or district by any one who would be bound by this proceeding at the time

this petition was filed. All the claims presented so far, excepting that of Hutt, for collision with the Stockbridge, are by administrators of persons whose lives were lost by the wreck of the steamer, and they make the further question that the act of congress does not protect the vessel-owner from liability for loss of life. I do not consider that the character of these claims cuts any figure in determining the question of the jurisdiction of this court over this petition, because if liabilities of this character are not covered by the act of congress, then no order of the court in this matter can affect them.

I, however, had this question before me in the case of *The Sea Bird*, a few years since, and came to the conclusion that this class of claims was within the act, and no light which has been thrown on the subject by later decisions and the discussions of this case has changed my view in that regard.

Most of the statutes in this country giving a right of action for death caused by negligence, and notably those of Illinois and Michigan, one of which must control in this case, have been substantially copied from Lord Campbell's Act, as it is called in England, and which was enacted prior to the act of congress limiting liability of ship-owners, and proceed upon the principle that the heirs, executors, or administrators of the person whose life is so lost by the negligence of another, have a pecuniary interest in such life. In some of the states the amount recovered goes directly to the widow and next of kin, and in others it goes into the general assets; so that the persons entitled to maintain an action may be said to have a "property" interest in the person whose life is lost; and it is because of this property or pecuniary interest that a right of action is given. I do not look upon these suits as penal suits, punishing the guilty party for his negligence, but only as a remedy for the recovery of the pecuniary interest which the survivors of the person whose life is so lost have in his life.