### THE LEONARD RICHARDS.

#### KIERNAN *et al. v.* THE LEONARD RICHARDS.

*(District Court, D. New Jersey. January 30, 1890.)*

1. **SHIPPING—LIMITED LIABILITY ACT—INTEREST OF OWNER.**
   The real value of the vessel in fault, without regard to liens upon her at the termination of her voyage, upon which she negligently caused the injuries complained of, measures the value of the interest of the owner, within the meaning of the limited liability act, which provides that the liability of a vessel for any loss, damage, or injury by collision, done without the privity or knowledge of the owner, "shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending."

2. **SAME—COSTS.**
   Where distinct issues are raised as to the right of the owner of the offending vessel to the benefit of the limited liability act, and also as to the fault of the vessel, upon the first of which only the owner is successful, he will be allowed such costs only as accrued on that issue. Admiralty rule 55, which provides for the payment of claims out of the fund in court, after the costs and expenses are first deducted, applies only when the owner does not contest the liability of the vessel for the alleged wrong.

3. **SAME—RIGHTS OF MATERIAL-MEN.**
   The right of a material-man to bring an action *in personam* against the owner of a vessel is not taken away by the fact that the owner is in a position to invoke the limited liability act, and hence he will not be enjoined from prosecuting such action.

In Admiralty. On settlement of final decree.

*E. D. McCarthy,* for the Leonard Richards.

*Owen; Gray & Sturges,* for the Quickstep.

*Wallis, Edwards & Bumsted,* for Communipaw Coal Co.

*Sidney Chubb,* for F. O. Matthiessen Sugar Co.

GREEN, J. It appears from the proceedings in this cause that in May, 1887, a collision occurred in New York bay between the steamship Ludwig Holberg, outward bound, and the bark Quickstep, inward bound, laden with sugar consigned to the F. O. Matthiessen Sugar Refining Company, and at the time of the collision being towed by the steamtug Leonard Richards to her wharf at Jersey City. As a result of the collision, the Quickstep speedily sank, and, with her cargo, became a total loss. A libel being filed in this court by the owners and crew of the Quickstep against the Leonard Richards, as the negligent cause of the collision, the owners of the tug also filed their libel against their own vessel, denying the negligence alleged, and praying that, if the steam-tug should be found to be in fault, they should be permitted to have the benefit of the act of congress of March 3, 1851, commonly known as the "Limited Liability Act," and the amendments thereto. The right of the owners of the steam-tug to claim the benefit of the limited liability act was contested by the other libelants, but unsuccessfully,—this court holding that the right was, under the circumstances, clear and unimpeachable; and thereupon the tug was valued under the act at the sum of $8,000, and a stipulation for that amount duly filed. Upon the final hearing of the cause, Judge BUTLER, then holding this court, found that the tug was in fault, (38 Fed. Rep. 767;) and, the amount of the various claims against her having been determined upon reference, the matter now comes before the court upon settlement of the final decree.

The first question suggested by counsel for the owners of the tug is as to the proper construction to be put upon the words "value of the interest of the owner," as used in the limited liability act. The section of the act in point, or so much of it as it is necessary to quote, is as follows:

"The liability of the owner of any vessel, * * * for any loss, damage, or injury by collision * * * done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." Rev. St. U. S. § 4283.

It appears in this case that supplies to a large amount had been furnished to this tug, which were at the time of the collision unpaid for, and which, under the law, were liens upon the vessel, and the insistment of counsel was that although the tug had an apparent value of $8,000, and had been appraised at that sum, yet the "interest of the owner" in her ought not to be calculated upon that basis, but that from the appraised value of the vessel should be deducted the full amount of the debts and claims owed by the vessel, and the balance taken to be the true "value of the interest" of the owner. In other words, that while the stipulation filed, and upon which the tug was released from the custody of the officers and returned to her owner, was for $8,000, yet when the time came for the payment of the sum into court, in com-

pliance with its condition, to be distributed among libelants and claimants according to law, there should be first deducted therefrom a sum equal to the full amount of all debts due for supplies, repairs, etc., for which liens against the vessel could be enforced, and the balance only brought here as the true value of the owner's interest, to be distributed *pro rata* among other libelants. Without considering whether the owner is not by his own act estopped from raising this question, now, after entering into a stipulation to pay the full amount of the appraised value of the tug if she be found in fault to the other libelants, and in consideration thereof receiving security from the law from all further or greater liability, I am clearly of opinion that the real value of the vessel in fault, without regard to liens upon her at the termination of her voyage, upon which she negligently caused the injury complained of, measures justly and equitably the value of the interest of the owner therein as contemplated by the limited liability act.

If the opposite contention of counsel be correct, it follows that in all cases claims arising *ex contractu* against a vessel, and liable to be secured by lien, are practically preferred to those other claims which arise directly out of the collision, and are *ex delicto;* and because of such preference are entitled to be paid and satisfied in full out of the value of the vessel, to the exclusion, if necessary, of the collision claims. But such result is directly in conflict with the principles laid down in the adjudicated cases. The contrary doctrine has been held almost universally. In *The Pride of the Ocean,* 3 Fed. Rep. 162, it was expressly held that, in a contest for priority between claims arising from a collision and a bottomry loan, the former were entitled to preference. In this case Judge BENEDICT used this language: "The value of the lender's security cannot be enhanced by a subsequent collision, nor could such collision in any way tend to preserve the lender's security for him, but the contrary,"—a statement of a principle which applies with equal force to a lien creditor.

In *The M. Vandercook,* 24 Fed. Rep. 472, Judge NIXON in this court held that the damages arising from the fault or negligence of the vessel, being *ex delicto*, should be paid in preference to claims for prior repairs and supplies; and to the same effect are the cases of *The R. S. Carter,* 38 Fed. Rep. 515; the same case, on appeal, reported as *The John G. Stevens,* 40 Fed. Rep. 331; and *Norwich Co.* v. *Wright,* 13 Wall. 104, 122.

The rule in England is in entire harmony with the rule as laid down here. I find it stated in Abbott on Shipping as follows:

"The maritime lien of damage originating in the wrong of the master and crew of the vessel in fault, and founded on considerations of public policy, for the prevention of careless navigation, takes precedence, within the limits which the law assigns to the indemnification of the injured party, even though anterior in date of liens *ex contractu*. It absorbs, in the event of the *res* proving insufficient to meet all demands, the liens of wages, towage, pilotage, and bottomry, leaving them to be enforced by proceedings against the persons of the owners. Were it otherwise, the owners to whom the damage is imputed would be indemnified at the expense of the injured party; the wrong-doers, at the cost of him to whom the wrong is done." Abb. Shipp. 621.

If, then, the maritime lien created by collision takes precedence of liens for loans or repairs or supplies, and other liens of a similar character, although the latter liens arose prior to the collision, it follows, at least as between the wrong-doer and the party injured, that the value of the vessel in fault, freed from all liens,—that is, the whole value of such vessel,—is to be looked to as the source of reparation. Such value cannot be lessened by any other claims whatever. Bottomry loans, claims for repairs, supplies, although outstanding as liens, must give way to the claim based upon the negligence of the vessel in fault. If the owner of such vessel desires to obtain for himself the benefit of the limited liability act, he must make a complete surrender of her, for the benefit of those she has injured, and the wronged party accepts her with the knowledge that his claim has precedence of all other claims; that her full value, without deduction for any lien, then outstanding, not arising out of collision, is set apart—dedicated—for the satisfaction of his claim. In this case the owners· elected, as they had the right, to retain the custody of the vessel in fault, and stipulated that, in lieu of the *rem*, they would pay the sum of $8,000 as her value. That sum must be taken to be the value of the vessel, which, if the vessel had remained in the custody of the court, would have been produced by her sale, and which would have been devoted to the payment of the claims against her arising out of the collision; and hence the "interest of her owners" in her is measured by her full and complete value as appraised. In my opinion, the stipulators must pay the whole sum for which the stipulation was filed, as the proper and just appraisement of the value of their interest in the tug. This sum would bear interest only from and after the date of the final decree.

The second question raised by the owners of the Leonard Richards concerns their liability to be cast in costs. ·They claim exemption from such liability·on two grounds: *First*, because they were successful in the application made by them to the court for the benefit of the limited liability act; and, *secondly*, because such exemption is conferred upon them by the fifty-fifth rule in admiralty, which, in terms, provides for the payment of claims out of the fund in court, in cases of limited liability, after the costs and expenses are first deducted therefrom. The allowance of costs, in many cases, is very largely a matter of discretion with the court, but the general rule is that the successful party in the litigation is entitled to them. In this case there were really two distinct and separate issues; the first relating to the right of the owners of the Leonard Richards to the benefits of the limited liability act, and the second as to the negligence and fault of the Leonard Richards. Upon the first of these issues the owners of the Leonard Richards were successful, and I shall allow them such costs as accrued solely upon that part of the litigation.

But the issue most hotly contested, in fact the main issue in the case, was that which concerned the alleged fault of the tug as the negligent cause of the collision; and upon this issue, a matter wholly distinct and severable from the other, the tug was found guilty. I know of no especial reason that would take this case out of the general rule, and there-

fore I think the owners of the tug should pay the costs accruing under this issue, and I so order.

It is proper to say that I have carefully considered the admiralty rule to which my attention was called. I do not consider that it governs this case. In my opinion, it is applicable only to those cases wherein the owner of the libeled vessel, having substantiated his claim to the benefit of the limited liability act, does not contest the liability of his vessel for the alleged wrong. In such cases the surrender of the vessel itself, or the giving of a stipulation for the value of his interest therein under the statute, fixes a limit to his liability; and the rule in admiralty very properly provides that the costs and expenses of the formal and orderly course of litigation necessary to obtain the proper distribution of the money representing the value of the vessel among claimants should be first paid out of such money. Otherwise, if the owner should be condemned to pay such costs, his liability would be in excess of the value of his interest in his vessel, and the limited liability act would not afford him that protection he is, by its terms, entitled to. But if the owner of the libeled vessel, by his defiant course, causes litigation upon an issue entirely distinct from and not based upon his claim for limited liability, and in such litigation is worsted, it is equitable and just that the taxable costs thereby necessarily incurred by his opponent should, in accord with the general rule and common practice, be paid by him. *The Favorite*, 12 Fed. Rep. 213; Hen. Adm. 296; *Thommasen* v. *Whitwill*, 12 Fed. Rep. 891.

Another question mooted is whether the material-men having claims against the Leonard Richards should be enjoined from bringing their actions to recover them. I think not. The limited liability act of 1851 does not, in terms or by implication, include such claims; and as to them the owner's liability is not, by force of the statute, in any degree limited. The action *in personam* is not disturbed or taken away from any class of claimants not expressly mentioned in the act. The right to such action, vested in all other claimants, remains unaltered and unaffected. It is alleged that the act of June 26, 1884, entitled "An act to remove certain burdens on the American merchant marine, and to encourage the American foreign carrying trade, and for other purposes," as amended by the act of June 19, 1886, seems to be applicable to claims of this character; and, if so, would limit the liability of an owner to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole. Without assenting to or dissenting from this view, it is only necessary to say that the proper construction of that act and its effect is not now before the court. The simple question to be considered is, does a material-man lose his right of action *in personam* against the owners of a vessel, where such owners are in position to invoke the benefit of the limited liability act? In my opinion, he does not. The right to his action is preserved to such claimant, and an injunction restraining him from prosecuting it would be a tyrannical exercise of power by this court, wholly without justification or reason. Let a decree in accordance with these conclusions be entered.