GOKEY *et al.* *v.* FORT *et al.*

(*District Court, S. D. New York.  December 24, 1890.*)

1. SHIPPING—LIMITATION OF LIABILITY—ACT JUNE 24, 1884—PERSONAL CONTRACTS.
     The act of June 26, 1884, limiting the liability of the owners of vessels "on account
     of the same" to their interest in the vessel and the freight pending, is to be construed
     as *in pari materia* with the act of 1851, (Rev. St. §§ 4283–4285,) and in accordance
     with the general maritime law, and does not embrace the personal contracts of
     such owners, or such as they have adopted as their personal liabilities.
2. SAME—LIABILITY FOR REPAIRS—COLLISION—RES ADJUDICATA.
     Repairs were made on the schooner P. in her home port, by order or the man-
     aging agent, with knowledge of some of the owners.  On the third voyage after-
     wards, through her fault, a collision claim arose against her, exceeding her value.
     The owners, upon the surrender of the vessel, and pending freight, thereupon ob-
     tained a decree limiting their liability, which decree was pleaded in bar of the claim
     in this suit against the owners *in personam* for the bill of repairs.  *Held,* that the
     decree was not a bar; that the claim was a personal contract of the owners, not
     subject to limitation, or, if so, only upon surrender of the vessel and freight as they
     existed at the close of that voyage, free from liens or demands growing out of prior
     or subsequent voyages.

In Admiralty.
*Alexander & Ash,* for libelants.
*Owen, Gray & Sturgis,* for respondents.

BROWN, J.    The libelants sue to recover a bill for repairs upon the
schooner J. J. Pharo, of New Jersey, in her home port, in May, 1889.
The respondents were the owners of the vessel at the time.    The amount
of the bill is not disputed, but the respondents set up as a defense the
proceedings for the limitation of their liability subsequently taken, and

a decree of this court therein, exempting them, in accordance with the provisions of the Revised Statutes, §§ 4283–4285, and the act of June 26, 1884, (23 St. at Large, p. 57, § 18.) The libelants claim that they are not within the provisions of either act, and are not affected by the decree. In the proceedings to limit liability, the vessel was sold, and the proceeds were deposited in the registry of the court. The vessel was in the coasting trade, and on the 31st of July, 1889, by her own fault, came into collision with the brig Kaluna, inflicting damages that exceed the proceeds of the vessel deposited in the registry, and the decree was founded upon those claims. The vessel had been run upon shares by the master. He acted as ship's husband and managing agent, transacting all her business, and reporting to the owners. The repairs in question were incurred in the yearly overhauling of the ship. They were ordered by the master, under his authority as managing agent, in the home port, with the knowledge also, at the time, of some of the owners. The collision was about two months after the repairs were made, and upon the third voyage after their completion.

1. In the case of *The Alpena*, 8 Fed. Rep. 280, it was held by Judge BLODGETT, in construing the act of 1851 and the provisions of the Revised Statutes, that each voyage or trip—

"Must be treated as a separate venture, involving its own particular hazards, losses, and earnings; and that, when each such voyage is ended, it is for the owner to decide whether the losses have been such as to make it expedient for him to invoke the protection given by this act of congress. * * * The language as well as the evident reason of the statute shows that this proceeding can only be had for the purpose of apportioning the owner's interest between several persons who have suffered losses on the same voyage."

Claims arising out of prior voyages were therefore held excluded from the limited liability proceedings, and not to be bound by the decree therein. I concur in the conclusion reached by Judge BLODGETT in that case, although the practice seems to be that liabilities for torts arising out of a prior voyage, unliquidated and undefined in amount, and often wholly unknown, may be limited upon a surrender of the vessel or her value after a subsequent voyage; the value and freight being determined according as they existed at the close of the prior voyage. See *The Benefactor*, 103 U. S. 239, 245, 9 Ben. 44, 47; *The City of Norwich*, (*Place* v. *Transportation Co.*,) 118 U. S. 468, 491, 6 Sup. Ct. Rep. 1150; *The Great Western*, 118 U. S. 525, 6 Sup. Ct. Rep. 1172; *The Doris Eckhoff*, 30 Fed. Rep. 140. I think the act of 1884 is doubtless to be treated as *in pari materia* with the act of 1851, (Rev. St. §§ 4233, 4285,) and designed to extend the act of 1851 to cases of the master's acts or contracts, and thus to bring our law into harmony with the general maritime law on this subject. *Butler* v. *Steam-Ship Co.*, 130 U. S. 527, 553, 9 Sup. Ct. Rep. 612; *The Amos D. Carver*, 35 Fed. Rep. 669; *Force* v. *Insurance Co.*, Id. 778; *Miller* v. *O'Brien*, Id. 779, 783. The act of 1884, like the act of 1851, limits the owner's liability to the "value of such vessel and freight pending." But there is no "freight pending," except upon the current voyage; and this shows that the debts of the last voyage only are

intended. It cannot be that prior debts are to be included but not prior earnings. *The City of Norwich, ut supra.* In the case of debts contracted for the benefit of the ship and of her owners, which are known, and are for known or ascertainable amounts, and of which the owners reap the benefit in the improvement of the ship, and in the freights subsequently earned, there may be sufficient reason to hold that the owners, having knowledge of such debts, adopt them as their own personal liabilities, if the vessel is sent out upon subsequent voyages, and that by so doing they lose their right to limit their liability in respect to such beneficial contracts, even if they were not at first personally liable therefor.

2. But the respondents were individually liable for the contracts of their managing agent, made in the home port, in the ordinary repair of the vessel, these repairs being known and approved by some of the owners. *The Two Marys,* 10 Fed. Rep. 923; *Scull* v. *Raymond,* 18 Fed. Rep. 549. It has been held that the limitation provided by the act of 1884 upon the liabilities of the owners "on account of the ship" does not extend to their personal contracts, but only to the debts and liabilities that arise out of the navigation or business of the ship, or from the contracts of the master, under his general powers in the course of the voyage. *The Amos D. Carver, supra; McPhail* v. *Williams,* 41 Fed. Rep. 61. Such has long been the construction of the broad provisions of the ordinance of Louis XIV., as well as of the similar provisions of section 216 of the Code of Commerce; (1 Valin, Comm. 568;) Emerigon, Cont. à la Grosse, c. 4, § 11; 2 Desjardin, Droit, Com. Mar. §§ 283–286; 2 Valroger, Com. du Code de Com. § 256. And, in general, repairs made in the home port by the owners, or by their authorized agent, are treated as the personal debts of the owners, and cannot be discharged by a surrender of the vessel. It is the same with the captain's foreign contracts from the time they are ratified by the owners. Several of the maritime codes thus expressly provide. See Italian Code Mar. § 491; 3 Revue, Internat. du Droit Mar. 316, 318; 4 Revue Internat. du Droit Mar. 337–339; and Desjardin, *ut supra.* Valin says: "There are cases, however, in which the owner cannot free himself by making this abandonment. * * * The reason is, because these debts are his own personal debts, as much as if he had contracted them himself." "It is universally recognized in modern law," says Desjardin, (section 283,) "that the right of abandonment cannot be invoked by the owner in order to limit his own personal obligation. The right of abandonment ceases also if the obligation at first contracted by the captain is ratified by the owner; it is the same as if the owner had acted himself. (Section 284.) All legislations that permit the owner to limit his obligation by abandonment disallow this right from the time he has transformed the captain's engagement into his own personal obligation." (Section 286.) In the case of *Norwich Co.* v. *Wright,* 13 Wall. 104, 120, and of *The Scotland,* 105 U. S. 24, 28, 29, Mr. Justice BRADLEY, in delivering the opinion of the supreme court, states that "the act of congress seems to have been drawn with direct reference to these previous laws," and that "the rule adopted by congress is the same as the rule of the general maritime law." *The City of*

*Norwich*, 118 U. S. 468, 490, 6 Sup. Ct. Rep. 1150. The general purpose of both is the same. The object of both was to encourage ship-building and commerce, and to enable persons having a moderate capital to engage in commerce without becoming liable for an indefinite amount beyond what was invested in the enterprise, through the faults or contracts of others. This principle becoming, early in the middle ages, a rule of the maritime law, secured, to a considerable extent, for persons engaging in commerce, the same beneficent results that the municipal law educed by other means; namely, by the formation of corporations, and, more latterly, by associations "limited," by which individuals may engage in trade without being liable beyond the amount of invested capital.

Construing the acts of 1884 and 1851 in the light of these decisions, and of the general maritime law which it was their purpose to introduce into our jurisprudence, I must hold that the decree set up in the answer, limiting the liability of the respondents, as a decree based on claims growing out of a subsequent voyage, does not affect the libelant's prior demand, and that this prior demand was from the first a personal liability of the respondents, and not subject to limitation at all; and that, if it were, it could only be thus limited upon the surrender of the vessel, or her value and the freight as they stood at the end of that voyage, free from all demands or liens growing out of any of her other voyages prior or subsequent.

Decree for libelants, with costs.