## AMERICAN WAREHOUSE & TRADING CO. v. DAVISON LUMBER CO. et al.

### (Circuit Court of Appeals, Second Circuit. January 16, 1917.)

### No. 134.

1. SHIPPING ⊚⟳50—CHARTERS—LIABILITY FOR WHARFAGE.

A charterer, who contracts for wharfage for the vessel, without disclosing that he is acting for any one else, is liable therefor, although by the terms of the charter, as between him and the owners, the liability is primarily on the latter.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 150–155.]

2. SHIPPING ⊚⟳207—LIMITATION OF LIABILITY.

Rev. St. §§ 4283, 4285 (Comp. St. 1913, §§ 8021, 8023), limiting the liability of vessel owners for torts committed without their privity or knowledge, and Act June 26, 1884, c. 121, § 18, 23 Stat. 57 (Comp. St. 1913, § 8028), extending the limitation to other debts and liabilities, are in pari materia, and the latter exemption does not extend to contracts made personally by or with the consent of a part owner.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 555, 643, 644.]

Appeal from the District Court of the United States for the Southern District of New York.

---

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

'Suit in admiralty by the American Warehouse & Trading Company against the Davison Lumber Company, with Winfield S. Pendleton impleaded. From the decree, libelant and respondent Pendleton appeal. Modified.

Haight, Sandford & Smith, and John W. Griffin, all of New York City, for appellant American Warehouse & Trading Co.

Avery F. Cushman, of New York City, for appellant Pendleton.

Kelly & Hewitt, of New York City, for appellee.

Before COXE, WARD, and HOUGH, Circuit Judges.

WARD, Circuit Judge. The libel was filed against the Davison Lumber Company, the charterer of the schooner Mount Hope, to recover wharfage furnished to her at Hoboken, N. J., between December 24, 1915, and January 23, 1916. The Lumber Company brought in the respondent Winfield S. Pendleton a part owner of the schooner, under the fifty-ninth rule in admiralty (29 Sup. Ct. xlvi).

The charter party was between the master of the schooner and the Davison Company, and was signed in the master's name by Pendleton Bros., Incorporated, the agents of the schooner. It was for the carrying capacity only, and was not a demise. When signed by Pendleton Bros., Incorporated, it contained the clause, "vessel to be free of wharfage," which the Davison Company struck out before signing. As the parties proceeded to perform the charter so altered, it is in our opinion to be treated as if it had never contained the clause in question. The obligation of paying wharfage lay, as usual, upon the vessel and owners.

[1] The Davison Company, without disclosing that it was acting for any one else, applied to the libelant for the berth, agreed upon the charge for wharfage per day, and sent the vessel there. It was therefore clearly responsible to the libelant, even though the liability between it and the owners was primarily on the latter. In this particular we disagree with Judge Smith.

At the time the charter party was executed, the schooner and her master were both at St. Johns, New Brunswick, and the master was quite without authority to make a charter, or to authorize any one else to make a charter, of the vessel in her home port. Pendleton Bros., Incorporated, were, however, the vessel's agents at New York, and the respondent Winfield S. Pendleton, who was vice president and a director of the company, was also managing owner, so that the charter party made by authority of the master must be regarded as having been fully ratified by the agents and managing owner.

Winfield S. Pendleton, in his original answer to the petition under the fifty-ninth rule, claimed that any decree against him must be confined to his share of the vessel. But in the court below his liability, as affected both by the act of March 3, 1851 (Rev. Stat. U. S. §§ 4283–4285, Comp. St. 1913, §§ 8021, 8023), as well as by the act of June 26, 1884, was fully considered, and we denied his application to amend his answer in this court by specifically claiming the benefit of

the act of 1884, on the ground that the cause was fully before the court and no amendment was necessary.

[2] It is now perfectly well settled that the acts of 1851 and 1884, are to be construed in pari materia. The former conferred exemption as to torts occurring without the privity or knowledge of the owner, and the latter extended this privilege to debts and other liabilities of the owner. It is well established that this exemption does not apply to contracts made personally by or with the consent of a part owner. McPhail v. Williams (D. C.) 41 Fed. 61; Gokey Co. v. Fort (D. C.) 44 Fed. 364; Great Lakes Towing Co. v. Mills Transportation Co., 155 Fed. 11, 83 C. C. A. 607, 22 L. R. A. (N. S.) 769; Richardson v. Harmon, 222 U. S. 96, 32 Sup. Ct. 27, 56 L. Ed. 110. It is not easy to lay down a hard and fast rule as to the latter contracts. Each case must depend upon its own facts. Liabilities which are imputed as matter of law, without any personal intervention of the owner, are certainly within the exemption. We have considered the subject in The Loyal, 204 Fed. 930, 123 C. C. A. 252, and Benner Line v. Pendleton, 217 Fed. 497, 133 C. C. A. 349. In the instant case Pendleton, as managing owner and vice president and director of Pendleton Bros., Incorporated, the vessel's agents, must be taken to have had knowledge of the charter party and to have ratified it. Otherwise it would have been invalid, because of the master's want of authority. Therefore Pendleton is as much personally bound as if he had signed the charter party, or directed it to be signed. In McPhail v. Williams, supra, Williams, a part owner, was held personally responsible for supplies ordered in the home port by another part owner with his knowledge and consent. In Gokey v. Fort, supra, Judge Brown said:

"But the respondents were individually liable for the contracts of their managing agent, made in the home port, in the ordinary repair of the vessel, these repairs being known and approved by some of the owners. The Two Marys (D. C.) 10 Fed. 923; Scull v. Raymond (D. C.) 18 Fed. 549. It has been held that the limitation provided by the act of 1884 upon the liabilities of the owners 'on account of the ship' does not extend to their personal contracts, but only to the debts and liabilities that arise out of the navigation or business of the ship, or from the contracts of the master, under his general powers in the course of the voyage. The Amos D. Carver [D. C.] supra [35 Fed. 669]; McPhail v. Williams [D. C.] 41 Fed. 61. Such has long been'the construction of the broad provisions of the ordinance of Louis XIV, as well as of the similar provisions of section 216 of the Code of Commerce (1 Valin, Comm. 569); Emerigon Cont. a la Grosse, c. 4, Sec. 11; 2 Desjardin, Droit, Com. Mar. §§ 283–286; 2 Valroger, Com. du Code de Com. § 256. And, in general, repairs made in the home port by the owners, or by their authorized agent, are treated as the personal debts of the owners, and cannot be discharged by a surrender of the vessel. It is the same with the captain's foreign contracts from the time they are ratified by the owners. Several of the maritime codes thus expressly provide. See Italian Code Mar. § 491; 3 Revue Internat. du Droit Mar. 316, 318; 4 Revue Internat. du Droit Mar. 337–339; and Desjardin, ut supra. Valin says: 'There are cases, however, in which the owner cannot free himself by making this abandonment. * * * The reason is, because these debts are his own personal debts, as much as if he had contracted them himself.' 'It is universally recognized in modern law' says Desjardin (section 283), 'that the right of abandonment cannot be invoked by the owner in order to limit his own personal obligation. The right of abandonment ceases also if the obligation at first contracted by the captain is ratified by the owner; it is the same as if the owner had acted

himself. Section 284. All legislations that permit the owner to limit his obligation by abandonment disallow this right from the time he has transformed the captain's engagement into his own personal obligation.'"

The decree is modified, by making the award, with interest and costs, payable to the libelant primarily by Winfield S. Pendleton, and secondarily by the Davison Company.