## THE S. S. HEWITT.

(District Court, S. D. New York. December 2, 1922.)

1. **Admiralty ⬦⟹64—Interrogatories must be in support of case of party presenting them.**

   Interrogatories must be confined to evidence in support of the case of the side presenting them.

2. **Admiralty ⬦⟹64—Respondents in suit to limit liability held not entitled to file interrogatories going to right of limitation.**

   In a suit for limitation of liability, respondents *held* not entitled to file interrogatories going to the question of libelant's right to limitation the burden of establishing which is on him.

3. **Shipping ⬦⟹209(3)—Answer in suit for limitation of liability considered as answer and claim.**

   Answer of respondents in a suit for limitation of liability, authorized by admiralty rule 53 (267 Fed. xx), considered in its twofold aspects, as answer and claim.

In Admiralty. Suit by the owners of the steamship S. S. Hewitt, for limitation of liability. On exceptions to interrogatories filed by respondents. Exceptions sustained.

James T. Kilbreth, of New York City, for exceptant.

Arthur Lavenburg, of New York City, opposed.

LEARNED HAND, District Judge. The petitioner was the owner of the S. S. Hewitt, which cleared from the port of Sabine, Tex., on January 20, 1921, for Boston, Mass., and was last spoken on January 25, 1921, off Jupiter, Fla. It is supposed that ·she foundered at sea shortly thereafter. The next of kin of 18 of the officers and crew sued the owners at law in the state courts and it was to enjoin these actions that this petition was filed.

The petition alleged the foregoing facts and that the total loss of the Hewitt was without fault of the petitioner, and was caused without its privity or knowledge; that nothing was saved, and that there was no pending freight. The answer of 15 of those who have brought suit. makes certain traverses and admissions, and then alleges that the vessel was overloaded and unseaworthy, to the petitioner's knowledge, because of that overloading, which was habitual, and because of the strains in the ship on previous voyages, and from a change in her from a coal to an oil burner.

The respondents filed with their answer 30 interrogatories, whose purpose is to ascertain whether or not she was seaworthy or overloaded at the time of clearing from the port of Sabine, and whether her unseaworthiness was known to the petitioner. The exceptions were filed on the theory that the interrogatories pry into the petitioner's case.

[1] It is settled that interrogatories must be confined to evidence in support of the case of the side presenting them (Prince Line, Limited, v. Mayer & Lage, Inc. [D. C.] 264 Fed. 856), and this is as true after the new admiralty rules as before. Therefore the question at bar turns upon whether or not the allegations of unseaworthiness and overload-

---

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing in the respondents' answer are true defenses to the petition. This calls for some formal analysis of proceedings for the limitation of a shipowner's liability under Revised Statutes, §§ 4283–4285 (Comp. St. §§ 8021–8023), and the fifty-first admiralty rule (267 Fed. xix).

[2] Such proceedings are theoretically in two distinct and successive parts (La Bourgogne [D. C.] 106 Fed. 232; In re Davidson S. S. Co. [D. C.] 133 Fed. 411), and, while for convenience the pleadings are in part consolidated, they are usually tried together, though that need not be done (La Bourgogne, supra). It is of consequence to clearness of understanding that they should be kept apart in the minds of pleaders. The first step is to determine whether the owner is entitled to limit his liability at all; the second presupposes his success in the first, and determines how far he is liable to respond to the claimant to the extent of what he surrenders. On the first he has the burden of proving all the necessary allegations; on the second the claimant has it. All the owner need show is that he is an owner, that he or his ship has been sued for some "act, matter or thing, loss, damage or forfeiture," and that this loss, if any, was "done, occasioned or incurred without the privity or knowledge" of himself. When he does this, his right to limit is established, and this stage of the proceedings theoretically ends. The rest is merely to ascertain the proper distribution of what he has brought into court and surrendered.

Preliminary even to this is the determination as to whether he has fulfilled the condition of his right by surrendering the vessel and her pending freight or by giving a stipulation of proper value. With that these exceptions are not concerned. Now, in undertaking to prove that the loss did not occur with his privity, the owner must necessarily show either just how the loss did occur, or, if he cannot, he must exhaust all the possibilities, and show that as to each he was without privity. This, to be sure, he need not always do by going over the possibilities, item by item. No doubt it might be enough to show that to his knowledge the ship was well found, properly manned, and staunch, tight, and adequately equipped. I do not mean to suggest any necessary form of evidence. The relevant point is that he undertakes to prove that, whatever the cause of loss, he was ignorant of it; that burden he undertakes, with all the possibilities which it may involve.

The respondent—not at this stage a claimant at all—has no burden of proof. All he need do is to break down the case made by the petitioner and he wins; the petition is dismissed, and he may sue the petitioner as and where he chooses. Such being the situation, it is clear that at this stage the respondent has no right to file interrogatories. He has no affirmative case to prove, unless in the extremely unlikely event that the petitioner has done something to disable himself from filing the petition at all. I can at the moment think of no such defense to the petition; in the vast majority of cases it will be met merely by traverses. Hence it is clear on principle that these exceptions are good.

[3] It is quite true that under the fifty-third admiralty rule it is provided that the answer to the petition "shall in suitable allegations state the facts and circumstances by reason of which the liability is claimed or right to limitation of liability should be denied." This is

because the answer serves two purposes. It is at once an answer to the petition and a claim of liability which will attach to the vessel, if surrendered, or to the stipulation. As claim it is, of course, an affirmative pleading, and must allege and prove the facts on which the liability depends. As answer, if the case were at law, or under modern rules in equity, it would content itself with traverses of so much as it meant to deny of the petition, and, if there are any, with defenses which would disable the owner from maintaining the petition. However, it has long been the practice of the admiralty not to confine pleadings to such bare limits, but to add to the traverses a narrative of the events described in the petition or libel, according to the version which the respondent or claimant will assert. This is, indeed, not a scientific form of pleading, though usage has sanctioned it. In no case, however, can it be allowed to change the burden of proof or the right to propound interrogatories. Strictly speaking, it is surplusage.

When the fifty-third admiralty rule (267 Fed. xx) requires of such an answer, in its capacity of answer stricti juris, a statement of "facts and circumstances," I believe that it refers to that usage. Whatever be its meaning, it does not change the relations between the parties as to burden of proof or interrogatories, because to do so would confound the whole plan and principle of the proceedings. Moreover, since the answer speaks in two voices, both as answer and as claim, it will usually in the nature of things be impossible to say that the allegations are not relevant to it as claim. All goes in together, and the court must disentangle the functions of the allegations as they appear.

Hence it is clear on principle that these interrogatories can be relevant only to the answer as claim. However, since there was nothing left of the ship and no freight, there was no res to distribute, and the answer as claim in the case at bar has no function whatever. Had there been something left of the vessel, or a stipulation, it would, indeed, have been proper at some stage to allow the respondents to file interrogatories, but that would be to support their answer as claim. Whether that should be done before trial of the issues arising under the petition would depend upon whether both stages of the proceeding were tried together. If yes, then the respondents, qua claimants, must have their evidence in advance of the trial; if not, then, as that evidence could not be theirs on the first trial, they should wait till the validity of the petition were determined. As the respondents can in the case at bar recover nothing, they cannot have any interrogatories.

In re Starin (D. C.) 173 Fed. 721, is not wholly plain. If the answer be regarded there as answer only, I cannot with deference follow the case. It is, however, more probable that Judge Chatfield was thinking of it as claim, in which event it is irrelevant here, though unquestionable law. I understand that The John H. Starin, 191 Fed. 800, 112 C. C. A. 286 (C. C. A. 2d), was the same case in a later stage. The report is not very full, and I am not sure just how far the cause had got. Apparently the claimants, cargo owners, were proving their claims against the proceeds. If so, the case has no bearing here. Judge Ward's partial concurrence clearly recognized the twofold character of the proceedings, and that the petitioner has the burden on his

284 F.—58

petition and the claimant on his claim. Some confusion may arise in reading his opinion, due to the ambiguity of the word "answer," which is really an "answer claim." Read with this in mind, it seems to me that Judge Ward agreed throughout with the analysis I have attempted above.

Exceptions sustained.