**Petition of ZEBROID TRAWLING COR-PORATION For Limitation of Liability.**

**No. 7407.**

United States Court of Appeals, First Circuit.

June 16, 1970.

Francis H. Fox, Boston, Mass., with whom Robert J. Hallisey and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellant.

Morris D. Katz, Boston, Mass., with whom Katz & Kaplan, Boston, Mass., was on brief, for Martha J. Manchester, Administratrix, appellee.

Brian T. Callahan, Medford, Mass, with whom Richard Flood, Lowell, Mass., was on brief, for First National Bank of Cape Cod, appellee.

Before ALDRICH, Chief Judge, WOODBURY,* Senior Circuit Judge, and COFFIN, Circuit Judge.

ALDRICH, Chief Judge.

The fishing vessel ZEBROID, owned by Zebroid Trawling Corporation (Trawling), subject to a preferred ship mortgage held by the First National Bank of Cape Cod, sailed on a fishing trip from Newport, Rhode Island, on December 30, 1967. Five days later, when in international waters, her captain was washed overboard in a storm and lost. On April 10, 1968, the bank brought suit in the district court to foreclose its mortgage. A warrant for sale of the vessel issued and she was sold by the United States Marshall for $45,000. The sale was approved by the court on May 27, 1968, and the net proceeds have been paid into the registry of the court.

On May 22, 1968, the captain's widow, Martha F. Manchester, filed a petition for leave to intervene in the foreclosure proceeding, alleging that she was in the process of being appointed administratrix of her late husband's estate and that in that capacity she would be the proper person to bring suit for his death under the Jones Act, the general maritime law and the Death on the High Seas Act, which she said she intended to do and which she in fact did on November 12, 1968. She sought an order that her claim constituted a preferred maritime lien on the vessel and the proceeds of the sale. Her petition for leave to intervene was granted.

On July 3, 1968, Trawling filed the instant petition for limitation of liability under 46 U.S.C. §§ 183-89, and with its petition a motion that the proceeds of the sale of the vessel in the registry of the court be held there and considered to be the security required by Supplemental Rule F(1), Fed.R.Civ.P. The court granted the motion ex parte and enjoined further prosecution of the widow's action. The bank then moved for leave to intervene in the limitation proceeding. Its motion was allowed, and after hearing the court revoked its previous allowance of Trawling's motion to apply the fund in the registry of the court as security. Trawling appeals.

The court rested its decision disallowing use of the proceeds of the sale of the vessel as security on two grounds. First, that the benefits of the Limitation of Liability Act are not available

* By Special Designation.

to a former owner, especially a bankrupt. In addition the court said, "[E]ven if the petitioner were still the owner and not bankrupt, its use for security purposes of funds belonging to the holder of a preferred ship mortgage would conflict with the well-settled rule that liens on the vessel must be independently paid or secured." We affirm on a restatement of the second ground.

■■■ The basic limitation provision, 46 U.S.C. § 183, is as follows.

"(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity or knowledge of such owner or owners, shall not * * * exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

Viewed a priori, this language might admit of some ambiguity. One area was early clarified by judicial decision; "value" is to be determined as of the end of the voyage on which the loss or damage occurs. The City of Norwich, 1886, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134. Secondly, the "value of the owner's interest" refers to the ship in specie, or to the owner's proportionate share thereof, Flink v. Paladini, 1929, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613; The Giles Loring, D.Me., 1890, 48 F. 463, 474–475, and not simply to his equitable interest, The Leonard Richards, D.N.J., 1890, 41 F. 818. This in itself suggests that since liability is not measured by the owner's actual interest, current absence of interest should not bar the limitation right. And, in fact, limitation has been held available to former owners even when the ship has been lost or abandoned, In re the Petition of Wood, S.D.N.Y., 1954, 124 F.Supp. 540, aff'd 2 Cir., 1956, 230 F.2d 197; The S.S. Hewitt, S.D. N.Y., 1922, 284 F. 911, or condemned and sold, The Giles Loring, ante, or taken over by the underwriters, The City of Norwich, ante. A previous owner was permitted to limit even when the cause of action did not arise until after it had parted with title, In re The Trojan, N.D. Cal., 1958, 167 F.Supp. 576.

■■■ The district court's conclusion that a former owner, who no longer has an interest, cannot limit was apparently based upon a statement by Gilmore & Black, The Law of Admiralty, 747–48 (1957), that "unless, after a limitation decree, the owner is in a position to continue operating his ships there is no reason to grant limitation in the first place." We do not accept that reasoning. The purpose of the Act is to encourage the investment in ships, not simply to provide for its continuance. We know of no case where limitation was refused on the ground that the owner had only the one vessel—nor, which is more to the present point, because he had parted with title.

■■■ Trawling argues that since the widow's claim has priority over the bank and the other lienor, Trawling has a right to have the court assign the sale proceeds to the widow's account in the limitation proceeding. Trawling says that if her claim is valid these lienors, being inferior, will be wiped out, and if not, they will not be hurt. This may be so if one looks only to recovery against the vessel, but it is a misconception so far as limitation is concerned. The right to limit claims to the value of the vessel applies only to the claims arising during the one voyage. The City of Norwich, ante; The Alpena, N.D.Ill., 1881, 8 F. 280. This includes all liens attaching during the voyage, whether prior in time, In re Moore, E.D.Mich., 1968, 278 F.Supp. 260, 265, or in substance, The H.F. Dimock, S.D.N.Y., 1910, 186 F. 662. Hence, the "well settled rule that liens on the vessel must be independently paid or secured," which the court took from the hornbooks, 3 Benedict, Admiralty, 457–58 (6th ed. 1940); Robinson, Admiralty, 928 (1939); Hughes, Admiralty, § 168 (2d ed. 1920), is over-general. Liens

attaching during the voyage will be subject to limitation, but this is to be effected in the court proceedings. Such liens are not to be "independently paid," but, rather, the full value of the vessel must be tendered into court. *The H. F. Dimock*, ante; The Giles Loring, 482 F., at 473. However, obligations which accrued prior to the voyage, not being subject to limitation, remain unaffected by the proceeding. Since vis-a-vis the owner they do not stand to be reduced, it must follow that he cannot throw the security interests of those lienors into the pot.

Early examples of the basic principle are to be found in Gokey v. Fort, S.D. N.Y., 1890, 44 F. 364; The U.S. Grant, S.D.N.Y., 1891, 45 F. 642. The fact that there is little decisional authority suggests that it has been universally accepted. Applied to the case at bar this does not mean that petitioner, or its insurer, must pay off prior liens, but merely that a stipulation must be filed to protect the limitation claimant in the amount of the value of the vessel. To do any less would mean that petitioner is limiting claims beyond the authority of the statute.

Affirmed.