651 F.2d 1101
 1985 A.M.C. 605
 In the Matter of the Complaint of RODCO MARINE SERVICES,
INC., As Charterer, and Alidore J. Delgrandile, Jr., As
Owner, Respectively, of the M/V GOOD BOY, praying for
exoneration from or limitation of liability, Plaintiffs-Appellants,
v.
Liliana MIGLIACCIO et al., Claimants-Appellees.
 No. 78-3129.
 United States Court of Appeals,
Fifth Circuit.
 July 30, 1981.
 
 Joe L. Horne, George J. Higgins, Jr., New Orleans, La., for plaintiffs-appellants.
 George N. Bischof, Jr., Chalmette, La., for Liliana and Peter Migliaccio.
 George T. Mustakas, II, Metairie, La., Harry P. Gamble, III, New Orleans, La., for Joy Purcell.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.
 THOMAS A. CLARK, Circuit Judge:
 
 
 1
 This appeal is from a district court order dismissing appellants' complaint for limitation of liability on the ground that they "failed to satisfy the condition requiring them to pay or secure all preexisting encumbrances on the vessel M/V Good Boy. 3 Benedict, Admiralty 458 (6th Ed. 1940); Robinson, Admiralty 928, et seq. (1939); Hughes, Admiralty, § 168 (2d Ed. 1920); Gilmore and Black, Admiralty, § 10-48 (2d Ed. 1975)." We hold that the district court erred, and we reverse and remand for further consideration.
 
 
 2
 The record in the case consists solely of the complaint and a minute entry reflecting a status conference between the court and attorneys for various interested parties, following which conference the court entered the order previously described. The complaint alleges that Rodco Marine Services, Inc. (hereafter "Rodco") was the bareboat charterer of the M/V Good Boy, which was owned by Alidore J. Delgrandile, Jr., both of which parties seek limitation of liability under the Shipowners' Liability Act.[1] The complaint alleges that the M/V Good Boy sustained a marine casualty and sank in the Mississippi River on December 16, 1977, resulting in the death of the master and two deckhands. The complaint further alleges that the loss of the vessel was not caused or contributed to by any fault or negligence on the part of the plaintiffs or anyone for whom the plaintiffs may be responsible. It is further alleged that the vessel was salvaged by Bisso Marine Company, Inc., which salvage was ultimately successful, but that in the process of the salvage operation Bisso negligently permitted the M/V Good Boy to fall to the river bottom a second time causing additional damage to the vessel. Bisso is alleged to have retained possession of the M/V Good Boy for its salvage lien, but there is no litigation pending between plaintiffs and Bisso. The complaint discloses that there is a preferred ship mortgage in favor of State Bank and Trust Company of Golden Meadow in the principal sum of $365,000.00, that litigation has been filed against the M/V Good Boy in three lawsuits arising from the deaths of the master and the two deckhands, and that there are claims for salvage not in litigation, those of Bisso in the approximate amount of $50,000.00 and of Taylor Driving and Salvage Company, Inc., in the approximate amount of $5,000.00. It is alleged that the owner's interest in the vessel did not exceed the sum of $150,000.00 after the sinking and that the amount owed for freight pending was nominal. The complaint concludes by alleging that complainants are financially unable to give a stipulation with sufficient surety for the owner's interest in the M/V Good Boy and asks permission to surrender the vessel to a trustee to be appointed by the court and that complainants' liability for damages growing out of the casualty be limited to their interest in the M/V Good Boy.
 
 
 3
 We are hampered in deciding the case because of the absence of facts before us since process never issued. The district court dismissed the complaint ex parte based upon the allegations in the complaint and the court's unrecorded conference with counsel for the parties who had filed suits against the plaintiffs herein and the vessel. However, since the complainants could not post adequate security or satisfy all preexisting encumbrances, the district court must have decided that the complainants had to satisfy one of those alternative conditions as a condition precedent to the bringing of an action for limitation of liability. We reverse for two reasons. First, we conclude that neither the limitation statutes, particularly 46 U.S.C. §§ 183 and 185, nor Rule F[2] support the requirement that preexisting encumbrances be satisfied prior to the bringing of a suit for exoneration of liability, and we hold that such is not required. Second, the only preexisting encumbrances considered by the court were the preferred ship mortgage and the claims for salvage. Since the mortgage is prima facie subordinate to tort claims pursuant to 46 U.S.C. § 953(a) and since the salvage claims arose from the voyage that gave rise to the limitation proceeding, it was not necessary for complainants to satisfy such encumbrances even if such a rule existed. The trial court erred in dismissing the complaint without appointing a trustee, having the vessel sold, determining the priority of maritime liens, and deciding whether petitioners were entitled to an order limiting their liability.
 
 
 4
 The statutes permitting a ship owner to limit his liability for voyage and disaster debts, in event of a casualty, to the amount or value of his interest in the vessel were enacted in this country in 1851 to encourage investments in this country's shipping industry. Similar laws had existed in European countries for centuries. An investor might have been willing to risk the loss of his capital investment in a vessel resulting from the hazards of a voyage from England to India in the eighteenth century, but he was unwilling to be exposed to the almost limitless liability for damages sustained by crew members, cargo owners, and owners of other vessels resulting from the negligent operation of his vessel by persons over whom he had little or no control. Because of these and similar exposures, owners were permitted to surrender the vessel or its value and all profits from the voyage, in payment of all claims arising from a casualty, in exchange for their liability being limited to the value of the vessel and its voyage profits.[3]
 
 
 5
 (1) While it might well be argued that such statutes are now anachronisms, 46 U.S.C. Secs. 183 et seq.[4] are still on the statute books, and it is the function of Congress, and not that of the courts, to repeal such statutes. There is nothing in the statutes or in Rule F[5] which puts any restrictions on the right of a ship owner to file a petition for limitation of liability. The district court erred in dismissing the complaint sua sponte and should have appointed a trustee, had the vessel sold, and the funds paid into the registry of the court. Rule F(5) clearly indicates that adverse parties may contest the limitation of liability. That comes during the litigation and not by dismissing the complaint as was done here.
 
 
 6
 Nothing in the statute or in Rule F requires a ship owner to pay or secure all preexisting encumbrances against the vessel before filing a limitation proceeding. Paragraph (2) of Rule F clearly says:
 
 
 7
 If the plaintiff elects to transfer his interest in the vessel to a trustee, the complaint must show any prior paramount liens thereon ... and any existing liens arising upon any such subsequent voyage or trip.
 
 
 8
 Thus, while the pleader must show in his complaint the prior paramount liens and any existing liens that arose upon subsequent voyages, the Rule clearly does not require that these liens be satisfied or secured as a condition precedent to filing the complaint.
 
 
 9
 While it is not necessary to our holding, we will briefly point out that there were no preexisting encumbrances described in the complaint. The only such encumbrances that could have been considered by the district court according to the record before us would have been the preferred ship mortgage and the salvage claims. Prior to 1920 mortgages on American ships were practically nonexistent, which contributed to the fact that in 1914 there were only 15 American ships of 1,000 tons or over engaged in overseas trade.[6] To remedy the problem Congress passed the Ship Mortgage Act of 1920, which was amended in 1954 and is codified in 46 U.S.C. Sec.s 951 et seq. Notwithstanding the impetus given to equity funding of ships by this statute, § 953(b) provides
 
 
 10
 that the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court.
 
 Subsection (a) of § 953 states:
 
 11
 (T)he term "preferred maritime lien" means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter; or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage.
 
 
 12
 Since collision insurance on a vessel is not contributed to the fund created by a limitation proceeding, this statute does not seem to be as harsh as a first reading would suggest. Thus, as in the case of the M/V Good Boy, the collision insurance would be paid to the mortgagee if the insurance contract so provided.
 
 
 13
 We make these observations about the possible effect of the Ship Mortgage Act on the priority of liens in order to explain why dismissal of the complaint based on the allegations was erroneous. We do not announce a rule for this case, or other cases, on the order of priority of liens as between claimants. Such priorities must be determined on the basis of facts developed by the district court.
 
 
 14
 The other prior encumbrances which the district court must have considered were the salvage claims of Bisso and the diver. That these are not previous encumbrances, but instead are part of the claims arising from the limitation proceeding voyage itself, is made clear by the Supreme Court decision in Metropolitan Redwood Lumber Co. v. Doe, 223 U.S. 365, 375-76, 32 S.Ct. 275, 277, 56 L.Ed. 473 (1912), in which the Supreme Court had the following to say:
 
 
 15
 But it is contended that a salvage claim, such as the one here involved, is not a claim for "damages or injury by collision," within the meaning of § 4283, Revised Statutes, and therefore not one to which the limited-liability act applies; that the damages there referred to are damages by collision to other vessels and their cargo, and that the expense of being towed to port is a claim like one for repairs. It is also said that even if the vessel owners may be able to include what they must pay for such a service in the damages recoverable from the guilty vessel, it is, notwithstanding, not a damage arising from collision, within the meaning of that section.
 
 
 16
 But we need not consider whether the claim is one against the owner of the character described either in § 4283 or the succeeding section, 4284. Those sections have been amended by the 18th section of the act of June 26, 1884 (23 Stat. at L.57, chap. 121, U.S.Comp.Stat.1901, 2945), so as to include "any or all debts and liabilities" of the owner, incurred on account of the ship, without his privity or fault. Richardson v. Harmon, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110.
 
 
 17
 The service was rendered to the res, benefiting alike owner and creditors. The claim is therefore of a highly meritorious character. But the question of preference in payment out of the fund is one to be determined in the limited-liability case. We therefore express no opinion as to whether such a claim may be preferred or must share pro rata with others.
 
 
 18
 In summary, we hold that the mortgage was not a prior encumbrance barring the owner and bareboat charterer from filing a proceeding to limit their liability. Further, we hold that the salvage claims are not prior encumbrances but instead are part of the claims arising from the voyage during which the casualty occurred and probably become a part of the limitation proceeding.[7]
 
 
 19
 In considering this matter we have reviewed the textbook authorities cited by the district court in its order, those being 3 Benedict, Admiralty 458 (6th ed. 1940); Robinson, Handbook of Admiralty Law 928, et seq. (1939); Hughes, Admiralty Law § 168 (2d ed. 1920); Gilmore and Black, The Law of Admiralty § 10-48 (2d ed. 1975). While these authorities give some support to the position taken by the district court, particularly Gilmore and Black, we do not find these textbook authorities supported by the statutes, the rule, or any decisional law.
 
 
 20
 The earliest text is that of Hughes, who says, at page 367, "the owner must also surrender the vessel clear of prior liens." Hughes relies on The Leonard Richards, 41 F. 818 (D. N.J. 1890). In that case the owner paid into court $8,000 as the value of the vessel when he filed his petition for limitation. In the limitation litigation the owner urged the court to direct payment from this fund to those liens previously existing against the vessel as well as the voyage liens arising from the disaster voyage. The court refused to accept this position and held that the owner had to pay the prior liens and that the $8,000 was available to satisfy only claims of the disaster voyage. This same point found its way into Robinson's treatise at pages 928 and 929, also relying on The Leonard Richards. Benedict then picks this up at pages 457 and 458 of his sixth edition with a sentence "Prior liens on the vessel, not effected by the limitation petition, must be independently paid or secured." However, Benedict asserts that this applies only to cases where the owner wishes to pay a fund into court and does not apply where the owner wishes to surrender the vessel to a trustee. Gilmore and Black in their § 10-48 rely on Benedict, Robinson, and Hughes, but acknowledge the lack of substantial authority to support such a statement. The principle enunciated had its roots in a dispute over whether prior liens would share in the limitation fund, and had no relationship to payment being a condition precedent to the filing of a complaint.
 
 
 21
 Gilmore and Black, while acknowledging that there is no valid foundation for the principle, nevertheless urge that prior liens must be satisfied by a vessel owner as a condition precedent to filing a petition for limitation as a means of vitiating the effectiveness of the statute and to permit courts to deny limitation altogether. Their argument is that when limitation is denied the owner, the disaster voyage claimants can have priority liens against the value of the vessel and then proceed as general creditors against any other assets the owner of the vessel might have. Under the Act, the disaster voyage claimants are limited solely to the value of the vessel in its disaster condition for satisfaction of their claims. As we have previously stated, the statute may well have lost its usefulness in this time of multiple forms of insurance, and the corporate form of limitation of liability, which business methods permit owners to limit their liability without resort to the statute. However, in this case the owner of the MV Good Boy has filed its petition, we are bound by statute, and we must leave to Congress its abolition.
 
 
 22
 We hold that there is no condition precedent to an owner of a vessel filing a petition for limitation of his liability. The petitioner must offer to surrender title of the vessel to a trustee to be appointed by the court or alternatively offer to pay into court a sum equal to the value of the vessel. If a trustee is appointed the vessel must be sold and the proceeds paid into the registry of the court. The court then determines the priority of the liens against the fund. If the entire fund is not available to voyage claimants, distribution should be made to the proper lienors and the owner denied exoneration.
 
 
 23
 We believe this holding comports with the reasoning of the First Circuit in the only decision we have found which discusses this subject, The Zebroid :
 
 
 24
 The right to limit claims to the value of the vessel applies only to the claims arising during the one voyage. The City of Norwich, (118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134,) ante; The Alpena, N.D.Ill., 1881, 8 F. 280. This includes all liens attaching during the voyage, whether prior in time, In re Moore, E.D.Mich., 1968, 278 F.Supp. 260, 265, or in substance, The H. F. Dimock, S.D.N.Y., 1910, 186 F. 662. Hence, the "well settled rule that liens on the vessel must be independently paid or secured," which the court took from the hornbooks, 3 Benedict, Admiralty, 457-58 (6th ed. 1940); Robinson, Admiralty, 928 (1939); Hughes, Admiralty, § 168 (2d ed. 1920), is over-general. Liens attaching during the voyage will be subject to limitation, but this is to be effected in the court proceedings. Such liens are not to be "independently paid," but rather, the full value of the vessel must be tendered into court. The H. F. Dimock, ante; The Giles Loring, 482 F. (463) at 473. However, obligations which accrued prior to the voyage, not being subject to limitation, remain unaffected by the proceeding. Since vis-a-vis the owner they do not stand to be reduced, it must follow that he cannot throw the security interests of those lienors into the pot.
 
 
 25
 Early examples of the basic principle are to be found in Gokey v. Fort, S.D. N.Y., 1890, 44 F. 364; The U. S. Grant, S.D.N.Y., 1891, 45 F. 642. The fact that there is little decisional authority suggests that it has been universally accepted. Applied to the case at bar this does not mean that petitioner, or its insurer, must pay off prior liens, but merely that a stipulation must be filed to protect the limitation claimant in the amount of the value of the vessel. To do any less would mean that petitioner is limiting claims beyond the authority of the statute.
 
 
 26
 The Zebroid, 428 F.2d 226, at 228-29 (1st Cir. 1970).
 
 
 27
 Finding that the dismissal by the district court was based upon an erroneous assumption that a vessel owner must pay off or secure prior claimants as a condition precedent to filing a limitation proceeding, we vacate the order of dismissal and remand.
 
 
 28
 VACATED and REMANDED.
 
 
 
 [1]
 46 U.S.C. § 181 et seq
 
 
 [2]
 Supplemental Rules for Certain Admiralty and Maritime Claims
 
 
 [3]
 The history of the limitations acts elsewhere and in this country are described in Gilmore and Black, The Law of Admiralty (2d ed. 1975), §§ 10-1 to 10-3
 
 
 [4]
 The statutes provide in pertinent part as follows:
 46 U.S.C. § 183:
 (a) The liability of the owner of any vessel ... for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
 46 U.S.C. § 185:
 The vessel owner ... may petition a district court of the United States ... for limitation of liability within the provisions of this chapter and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, ... or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease.
 There is an exception in § 183(a) designed to protect passengers in case of collision, but that exception does not apply to towing vessels which was the classification of the M/V Good Boy according to the complaint.
 
 
 [5]
 Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims:
 Rule F. Limitation of Liability
 (2) Complaint. The complaint shall set forth the facts on the basis of which the right to limit liability is asserted .... If the plaintiff elects to transfer his interest in the vessel to a trustee, the complaint must further show any prior paramount liens thereon, and what voyages or trips, if any, she has made since the voyage or trip on which the claims sought to be limited arose, and any existing liens arising upon any such subsequent voyage or trip, with the amounts and causes thereof, and the names and addresses of the lienors, so far as known; ....
 (3) Claims Against Owner; Injunction. Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or his property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or his property with respect to any claim subject to limitation in the action.
 (4) Notice to Claimants. Upon the owner's compliance with subdivision (1) of this rule the court shall issue a notice to all persons assenting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice....
 (5) Claims and Answer. Claims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule.... If a claimant desires to contest ... the right to limitation of liability he shall file and serve an answer to the complaint unless his claim has included an answer.
 Paragraph (1) of Rule F has been omitted because it is the same in all respects as 46 U.S.C. § 185, which is set forth in note 4 supra.
 
 
 [6]
 Gilmore and Black, supra note 3, § 9-48
 
 
 [7]
 In holding as we do on this latter point, we are not unmindful of the fact that there are instances when a salvage contract becomes the personal obligation of the owner or charterer of a vessel, and it is true that in some instances personal contracts are not subject to limitation of liability. However, we cannot get into this difficult point with the dearth of facts available to us in this meager record