## THE ABBIE C. STUBBS.[1]

### (*District Court, D. Massachusetts.* July 9, 1886.)

SHIPS AND SHIPPING—LIABILITY OF VESSEL OWNERS—LIMITATIONS IMPOSED—
REV. ST. § 4283—GENERAL AVERAGE—SALVAGE—FREIGHT AND WAGES SUB-
SEQUENT TO COLLISION.

Vessel owners, entitled to the protection of the act limiting the liability of
vessel owners, (Rev. St. § 4283,) should, in causes of collision, on petition, be
credited with the expenses of salvage, and with the vessel's proportion of the
general average charges, accruing subsequent to the collision, but not to any
apportionment of freight or wages for a like period. "Freight then pend-
ing" means freight earned at the end of the voyage.

In Admiralty.

Petition by the owners of a vessel condemned and sold for the pay-
ment of damages, in a cause of collision, for leave to avail them-
selves of the benefits of the act limiting the liability of vessel own-
ers, (Rev. St. § 4283,) and praying that freight earned, wages due,
salvage, and general average, subsequent to the collision, be deducted
from the proceeds.

*R. Stone,* for the Perkiomen.

*W. W. Dodge,* for the Abbie C. Stubbs.

NELSON, J. On the former hearing of this case both these vessels
were pronounced at fault for a collision between them on the night
of July 15, 1885, off Monomoy beach, in which the Perkiomen
was sunk, and the Abbie C. Stubbs was so severely injured that she
was run ashore on Monomoy beach, to keep her from sinking. The
Perkiomen earned no freight, and has since been blown up by the
government as an obstruction to navigation. The Abbie C. Stubbs
was got off the beach, after throwing overboard a part of her cargo,
and was towed to New Bedford, her port of destination, where she
delivered what was left of her cargo, and earned freight amounting
to $258.55. She was arrested in this suit, and has been sold by the
marshal, producing $7,760.53 net. Her owners claim the benefit of
the act limiting the liability of ship-owners for loss by collision.
There being no pretense that the collision occurred with their privity
or knowledge, the court has no power to decree for a greater amount
than her value after the collision, and "her freight then pending."
Rev. St. § 4283. But as one-half of the loss by the destruction of
the Perkiomen, after deducting one-half of the damage to the Abbie
C. Stubbs, exceeds $50,000, the decree must necessarily exhaust the
whole fund in the registry of the court, unless certain deductions
asked for by the owners are allowed.

They ask, first, to have the freight apportioned, and to be held re-
sponsible only for so much as accrued up to the time of the loss. It

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

has been recently decided by the supreme court in the case of *Place*
v. *Norwich & N. Y. Transp. Co.*, 6 Sup. Ct. Rep. 1150, that there
can be no apportionment of the freight where the voyage has been
broken up by the collision, and no freight earned. The court held
that, for the purpose of measuring the amount of the ship-owner's
liability, under section 4283, it is at the termination of the voyage
that the vessel is to be appraised, whether the voyage is stopped by
the disaster of the collision, or is continued after the collision, and
ends at the port of destination; and to this is to be added the freight,
if any, earned on the voyage; but that no unearned freight is to be
added in any event.

When a ship-owner sends his ship to sea, so far as his liability for
collisions and other losses happening through the fault of those in
charge of her, and without his privity or knowledge, is concerned, he
puts at risk only his ship, the expense of navigating her, and the
freight she may earn on the voyage. His responsibility is limited to
the capital embarked in the adventure, and the profit he may gain
from it in the form of freight, or its equivalent. If the ship is sunk
or destroyed, and no freight earned, his whole responsibility is at an
end. If either or both are saved, in whole or in part, to that extent
his liability remains. The words "her freight then pending," as used
in section 4283, must at least include freight earned at the end of the
voyage, for cargo on board at the time of the collision, which is this
case. Any deduction from the freight in the nature of an apportion-
ment is therefore disallowed. So, also, are the wages of the master
and seamen after the collision, and the expense of a tug in towing
the vessel from Monomoy beach to New Bedford. These were not,
in any sense, salvage services, but were the ordinary expenses of the
voyage, incurred in earning the freight.

The owners also claim deduction for sums paid salvors for services
rendered in getting the vessel off the beach, and also a contribution
in general average for the cargo jettisoned. Both these claims should
be allowed. Both were extraordinary expenses, incurred for the pres-
ervation of the vessel and freight, as well as of the cargo, and for the
common benefit, after the libelants' lien had attached. They stand
on the same footing as repairs made after the collision, which the
court decided in *Place* v. *Norwich & N. Y. Transp. Co.*, *ubi supra*,
ought not to be included in the appraisement of the vessel for the
purpose of determining the amount of the ship-owner's liability. The
salvage expenses are to be apportioned upon the vessel, freight, and
cargo in proportion to their respective values, and the shares belong-
ing to the vessel and freight are to be deducted from the proceeds in
the registry. The general average contribution apportioned upon the
vessel and freight for cargo jettisoned is to be deducted in full.

A decree is to be entered for the libelants, made up in accordance
with this opinion, without costs. Ordered accordingly.