## THE JANE McCREA.

### (District Court, D. Maine. April 4, 1903.)

### No. 39.

1. TUG AND TOW—DUTY OF TUG—CARE TO GUARD AGAINST INJURY OF TOW.

A vessel which undertakes a towage service is liable for reasonable care of the tow, and that reasonable care is measured by the dangers and hazards to which the tow is exposed, which it is the duty of the master of the tug to know and to guard against not only by giving proper instructions for the management of the tow, but by watching her, when in a dangerous locality, to see that his directions are obeyed.

2. SAME—NEGLIGENCE—LIABILITY FOR INJURY OF TOW.

The master of a steamer, having contracted to tow a schooner from her wharf, beyond the end of which her stern projected about one-third of her length, undertook to swing her around by the stern, there being a reef about a length astern of her, and directed the captain of the schooner to cast off all lines except the stern line, after which he started her backward, being himself in the pilot house, where he could not watch her movements. The captain of the schooner cast off all her lines, and she moved backward until she grounded upon the reef. *Held*, that both vessels were in fault, and that the tug was not exonerated from liability for a share of the damages, because, after they had started backward, her master was told by the master of the schooner, in reply to his inquiry, that there were no rocks ahead.

In Admiralty. Suit for negligent performance of towage service.

Thomas W. Vose, for libelant.

E. P. Spofford and Bird & Bradley, for claimant.

HALE, District Judge. This case has been clearly and ably presented by counsel. The issue is a very distinct one, and lies in a small compass. The testimony of the witnesses is fresh in the mind of the court, and I can have no doubt as to what the decision should be. I will therefore announce it at once from the bench.

William H. Coburn, master and owner of the schooner George W. Lewis, brings his libel in this case against the tugboat Jane McCrea, alleging negligence in towing service. That service was performed in the harbor of Stonington, at Deer Isle, on the morning of August 15, 1902. At the time the service was begun the schooner was lying at the westerly side of Candidge's Wharf, in Stonington, her stern projecting out by the end of the wharf about 20 feet. The schooner is 70 feet long and 19 feet beam. In a southerly direction, a little westerly of the wharf, and 90 feet from its southwest corner, is a ledge of irregular formation. To the westerly of the wharf, and about 40 feet distant, there are some large rocks on the shore, so that the towage service was to be performed in a place of considerable danger. The Jane McCrea, the libeled steamer, is not a regular tugboat, but is a lobster steamer, 40 feet long. The claimant, however, in his answer, admits that he was "employed by the master of the schooner to tow said schooner from said wharf into the harbor of said Stonington," and he admits that he received the ordinary pay for such towage service. So that we must hold that the steamer in this case is under the ordinary duties and liabilities of a tugboat. There is a sharp conflict of testimony in the case. The captain of the schooner, Lewis, asserts

that the captain of the tugboat made the suggestion to him (to which he agreed) that the best method was to cast off all lines except the bowline, or "bowspring," as it was termed by the witnesses, and to swing the schooner's stern away from the wharf to the westward, and then, casting off all lines, to take her out by the ledge stern first. In this, however, his testimony stands unsupported by any other witness. The captain of the towboat asserts, on the contrary, that the method he intended to use was to hold fast the stern line, and then, by backing on the stern line, to swing the stern of the schooner around the corner of the wharf, at the same time swinging the bow out to the westward, thus heading her directly out of the channel; that, in accordance with such suggestion, when he came alongside the schooner, he gave orders to her captain to cast off all lines except the stern line, and to hold that fast. In this he is corroborated by the engineer of the tug and the mate of the schooner. The preponderance of the evidence is so strongly in favor of the theory of the captain of the steamer that his purpose was to swing by keeping fast the stern line, and take the vessel out in the way he has described, that I find that his story of the transaction is in accordance with the truth. While there are many things pointing to the conclusion for which the learned counsel for the libelant contends, the preponderance of the evidence is distinctly the other way. And it seems to me that in the proper maneuvering of a vessel and tug in this dangerous place the tug would be likely to adopt the method which the claimant asserts was adopted. So that, holding, as I do, that a great preponderance of the evidence substantiates this view, the master of the schooner was in some fault in letting go the stern line when he let go the other lines. But, whatever his fault was in letting go the stern line contrary to the orders of the captain of the steamer, he was clearly in fault, after the vessel was going astern, in not calling attention to the fact at once after she began to go astern, and to the fact that she was going upon the rocks. It appears from the admissions of Capt. Coburn that after the vessel began to go astern he stated, in reply to a question from Capt. Eaton on the steamer that there were no rocks ahead. This tended to mislead the captain of the steamer. I find, therefore, that the captain of the schooner was in some fault, not only in casting off the stern line contrary to orders, but in his subsequent conduct in misleading the captain of the steamer while the vessels were going astern.

The next question which presents itself is, was, or not, the steamer in fault? What are the duties of a tug in charge of a tow? In The Julia S. Bailey, an unreported case in this court, Judge Webb comments upon the duties of the master of a tugboat in a dangerous place. Under this decision and under the well-settled law of the federal courts, the tug is liable for reasonable care of the vessel to be towed, and that reasonable care is measured by the dangers and hazards to which she is exposed and to which the vessel in tow is exposed. The court said:

"The captain of the towboat ought to have fully informed and warned the captain of the schooner of the danger, and the proper means to overcome it, and also he should not have trusted altogether to his previous in-

structions, but, as the dangerous part of the navigation was approached, he should have watched his tow."

In the case at bar the master of the tugboat had ordered the master of the schooner to hold his stern line, and had then ordered his engineer to go astern, but he was not then excused from watching his tow to see that his orders were carried out. He is under the great responsibility of watching his tow at every point during the towage service in so dangerous a place as this is testified to be. And, even though the captain of the schooner asserted to the captain of the steamer that there were no rocks, even this does not excuse the master of the tug from knowing the channel, and knowing whether there were dangers ahead. I hold the master of the towed vessel in fault for taking the part in the transaction which he did, but this does not excuse the master of the tugboat for his failure to know the channel and his failure to know whether his instructions had been carried out. In order to excuse himself, Capt. Eaton on the tug says he was in the pilot house at the wheel in an inclosed place, and could not watch the vessels; but it was his duty either to be able to watch the vessels from where he stood at the wheel, or to have a lookout on the deck to watch the towed vessel at every point. If he had been on the watch, he could have seen at once, when the beginning of the backward movement was made, whether the schooner was swinging or going astern; and when he found she was going astern, instead of swinging, he could have had time to avoid the injury, for, according to his testimony, it took some four or five minutes after the schooner started astern until she stranded.

I therefore hold the master of the tug in fault because he was undertaking to tow in a channel he did not know, and, further, after he had given instructions, because he assumed that the instructions would be carried out, and did not watch his tow. He did not exercise the reasonable care and prudence required in the towage service in a dangerous place. I therefore hold both parties in fault, and the result must be that the damages be divided with an order of reference to an assessor to determine the amount, the libelant to have full costs.