### THE H. F. DIMOCK.

(District Court, S. D. New York. March 28, 1910.)

SHIPPING (§ 209*)—PROCEEDINGS FOR LIMITATION OF LIABILITY—BOND FOR VALUE.

In proceedings for limitation of liability by the owner of a vessel which had been in collision, a bond for value given by petitioner must cover her value at the time she ended her voyage, and her then pending freight, and unadjudicated claims for salvage services and general average charges cannot be deducted from such value, although such expenses were incurred to enable her to complete the voyage, and are entitled to precedence over collision claims, since the collision claimants have the right to contest such claimed liens.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 646–662; Dec. Dig. § 209.*

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

In Admiralty. Petition by the Metropolitan Steamship Company, owner of the Steamship H. F. Dimock, for limitation of liability. On exceptions to report of commissioner to ascertain value. Exceptions sustained.

The steamship above named collided with another vessel while on a voyage from New York to Boston, and received such injuries that she required the services of salvors. She succeeded, however, in completing her voyage and delivering her cargo in a partly injured condition. She then returned to New York, and there instituted proceedings for a limitation of liability. It was referred to a commissioner to ascertain her value for purposes of giving bond in the limitation proceedings. The report of the commissioner having been filed, this hearing was had on exceptions thereto.

Mr. Burlingham, for petitioner.
Mr. Kirlin and Mr. Brown, for claimants and exceptants.

HOUGH, District Judge (after stating the facts as above). It is admitted that, in order to ascertain the amount of bond to be given by

petitioner, the cost of repairs must be deducted from the sound value. The commissioner, however, has recommended that salvage and certain general average charges should also be deducted.

It cannot be denied that, in order to secure the limitation of liability provided by the statute, the shipowner must pay or secure "the value of the ship at the time her voyage was ended and the amount of her then pending freight." In this case the voyage of the Dimock did not end until her arrival in Boston. She encountered no disaster which terminated her voyage upon a reef, as in Pacific Coast Co. v. Reynolds, 114 Fed. 877, 52 C. C. A. 497.

Therefore the question is, What was the value of the ship when she arrived in Boston? It may be true—I think it is—that in order to reach Boston she incurred expenses, particularly for salvage, which are paramount to claims arising out of the collision that rendered salvors necessary. But such claims when the voyage ended existed only as maritime liens. The collision claims likewise so existed, and the fact that all lienors might not be of equal rank can make no logical difference either in the ownership of the vessel or her monetary value.

If salvage and general average claims are to be treated as diminishing the injured value of the vessel at her port of destination, no reason is seen why any other maritime lien of superior priority should not be treated in the same way, and the value for which the owner must give bond be considered only as that sum which remains for the collision (or other disaster) claimants after the payment or allowance of all prior liens. This is surely illogical. Suppose that, when the Dimock arrived at Boston, salvors had there filed a libel against ship and cargo—her owner could at once have filed his petition for limitation and the usual injunction would have stayed the salvage suit, and compelled salvors to come into the limitation proceeding. So, too, other claims ultimately brought into general average would have been compelled to prove against the fund arising from the sale of the injured vessel.

There is no difference in legal effect between surrender and sale through a trustee, and giving a bond or stipulation. Either the sale proceeds or the bond amount represents the vessel and the whole vessel just as she was when her voyage terminated, and against that whole all claims of whatever rank must be proved. It may be convenient — I think it is—where the amount of a claim is clear and its priority undisputed to allow payment in the first instance, and not compel such superior lienor to go through the formality of participating in a proceeding frequently cumbersome, sometimes extremely tedious, and almost always prolonged. But that convenience cannot become a principle of law. It seems to me that the cases referred to in argument do not, with the exception of one sentence in The Abbie C. Stubbs (D. C.) 28 Fed. 719, sustain the conclusion advocated by petitioner and adopted by the commissioner. In the case just cited, the Stubbs and the Perkiomen had been in collision. The latter vessel was wholly lost, and her owners proceeded against the Stubbs in rem. Both vessels were held in fault; and the Stubbs sold under the resulting decree. The latter's owners then moved to limit liability, apparently in the col-

lision suit. All parties were before the court, the entire value of the Stubbs was in court, and, after hearing, salvage and general average for cargo jettisoned were allowed as claims entitled to priority over the demand of the Perkiomen. It seems to me that this was right, but when Nelson, J., added that the allowed claims "stand on the same footing as repairs made after the collision," I think he went too far, if he meant that they bore the same relation to the sound value of the vessel. Repairs after collision are not included in appraised value because from the nature of things they are not and cannot be included in "injured value"; but salvage and general average charges are necessarily so included because it is only out of "injured value" that salvage and general average liens can be paid.

In The Anna (D. C.) 47 Fed. 525, the order actually made seems entirely consistent with the view above sought to be advanced. In that case the vessel was bound to a place called "Cohen's Landing." She sank before she got there, was raised and accomplished her voyage, and the court entered an order "for her appraisement as she was at Cohen's Landing with a separate statement of the cost of raising her and of the amount of freight earned." This means, as I take it, that the court reserved for future decision the question as to the reasonable value of raising the Anna and the allowance of such reasonable sum as a prior claim out of her injured value at the port of destination.

In Pacific Coast Co. v. Reynolds, supra, the voyage terminated upon a distant and unknown reef. Whatever value attached to the wreck was produced by salvors bringing it to port. By the time limitation proceedings were instituted the repairs, or more properly the rebuilding of the wreck, had been nearly or quite completed. No wreck existed, and the question presented to the court was, "What was the value of the steamship at the end of her voyage; that is, as she lay stranded on the reef?" a question which could only be settled by considering the value of the wreck at the port of distress whither she had been brought by salvors, and deducting therefrom the expense of bringing her into that port. The question there considered is the same as is presented here and in many limitations after collision; but the method of solution was peculiar—not because the law varies, but because the facts were unusual. There the only method of arriving at value when wreck terminated the voyage was to work backward and make deductions from a value found to exist in another port or place and long after such termination. That is not true here. In both the Stubbs and Pacific Coast Co. Cases there were no deductions from "injured value" before payment into court. In the former the whole injured value was in court. In the latter the only litigated question was how such value should be determined, but, once ascertained, it was never doubted that it should all be paid into the registry. If the record before the court showed that there had been an opportunity for all parties in interest to inquire into the actual value of the salvage services rendered the Dimock, and into the nature and amount of the other charges admitted in general average, it might be well to avoid circuity of procedure and at once allow such of these demands as appear para-

mount to all others, and then permit the owners (whose underwriters have really discharged said claims) to give bond for the balance, as divisible among collision claimants. But the record is not sufficient to enable this to be done, and an average adjustment cannot take the place of a "day in court."

The theory of procedure has been that salvage and general average are to be treated, not as claims or liens against the fund derived from or representing the injured value of the Dimock, but as something to be deducted before that value can be fixed. This on the reason of the matter I am convinced is error. The claimants must have an opportunity to contest salvage and average demands as they may contest any other lien against the fund. That opportunity they have not had. Nor, as above sought to be shown, do the cases cited militate against the view advanced, except the sentence from the Abbie C. Stubbs, declaring that the charges under consideration "stand on the same footing as repairs made after collision"—and from that statement of the law I dissent.

The argument for some of the claimants that, inasmuch as the petitioner owner itself employed the salvors, therefore the salvors' claim cannot participate in this limitation has not passed unnoticed. No finding on this point need now be made. If the salvors had a lien on the Dimock, that lien still exists against her proceeds. Whether or not they had such lien is one of the questions that may be raised, and, if raised, must be adjudicated in due time.

It is therefore ordered that the petitioners give a bond for the injured value of the Dimock on arrival in Boston, or, what is the same thing, for her sound value less cost of repairs, and also for her pending freight, the bond to bear interest from the date of the filing of the petition herein.