## THE ROBERT H. COOK (two cases).

District Court, N. D. New York. May 23, 1928.

**I. Admiralty 61—Claimant of tug was bound by allegations in answer in libel proceedings that failure to steer was cause of deflection of rear of tow.**

In libel proceedings against tug for injuries to boats in tow, claimant of tug was bound by allegations in answer that failure to steer was cause of the rear of the tow swinging out of the channel.

**2. Towage 11(1)—Tug is dominant mind and will of tow.**

Tug is responsible as dominant mind and will of tow in case of injury to boats in tow.

**3. Collision 95(2)—Owner of tug towing boats in narrow channel held liable for damages resulting to part of tow deflected from channel, due to known failure to steer last two tiers of boats.**

Owner of tug, towing over thirty boats along narrow tortuous channel, whose captain knew that there was no steering of the last two tiers of boats in the tow, but nevertheless proceeded, *held* liable for damages sustained by canal boats near rear end of tow, caused by swinging out of channel as result of such failure to steer.

**4. Collision 95(2)—Master of tug must not only give instructions relative to steering of boats in tow, but must see that instructions are obeyed.**

Master of tug is not only under duty to various members of tow to give instructions relative to steering of boats while going through channel, but must see that such instructions are obeyed.

In Admiralty. Libels by Morgan St. Clair, owner of the barges Miller and Matton, against the steam tug Robert H. Cook. Decree for libelant in both cases.

Macklin, Brown, Lenahan & Speer, of New York City (Edmund F. Lamb, of New York City, of counsel), for libelant.

O. A. Dennis, of Whitehall, N. Y., and George J. Hatt, 2d, of Albany, N. Y., for claimant.

COOPER, District Judge. These two cases were tried together, as they arose out of the same accident. Libelant sues for damage to his two canal boats Miller and Matton, which are alleged to have suffered injury on May 20, 1925, because of the negligence of the tug Robert H. Cook while they, with other boats, were being towed by the tug on Lake Champlain, from Whitehall, N. Y., to Quebec, Canada.

The channel of Lake Champlain from Whitehall to the deep waters of the lake is narrow and very tortuous, ranging from 75 or 100 feet to about 200 feet in width. These two boats were part of a tow of 31 to 34 boats which left Whitehall about 5 o'clock p. m. on that day in charge of the tug. The boats were in tiers of two each. The various tiers were about 9 feet apart, according to libelant, and were supposed to be 12 to 15 feet, according to claimant. The libelant's two boats were abreast of each other in the fifteenth tier; there being but two tiers behind them. All the boats were loaded except the boats in the last tier.

According to libelant's contention, the Miller ran on the rocks at two places outside of the channel, and was dragged over the rocks, the spring line breaking, and the Matton went on the rocks at another place out-

side of the channel. These mishaps are said to have occurred about 8:30 to 9:30 p. m.

The evidence shows that tows of any length being taken through the channel are likely to sway, especially at their rear ends, as they round the various curves in the channel, and, unless checked, are likely to go outside of the channel. While libelant did not act after the accident as a boatman ordinarily would act whose boats were seriously injured, there seems little doubt that these two boats received some damage while being thus towed, though perhaps not as much as claimed. It is not important to determine the exact way in which the damage was caused, about which there is some dispute, for it is clear that the boats received their damage because they were not kept within the channel.

The libelant asserts that the damage occurred because of the negligence of the tug, among other things, in going through the channel at night, in carrying too large and unwieldly a tow, in failing to keep its tow properly under control with a proper lookout, and in allowing it to get outside of the channel and become damaged, instead of keeping it within the channel.

The claimant in its answer asserts that in going around the bends in such a channel it is necessary for the masters of the rear boats in such a tow to have tight lug lines and to steer their boats to prevent the rear of the tow from swerving out of the channel, and that in this tow the masters of the rear boats, including the libelant, did not have such tight lug lines, and failed to steer, and that such failure allowed or caused the rear boats, including libelant's, to swing out of the channel.

In view of the conclusion reached herein, it is not necessary to discuss more than one of the various respects in which libelant claims the tug was at fault.

There is proof that about the only means of preventing the rear part of the tow from going out of the channel was for the masters of the boats, particularly in the last tiers, to steer their boats. Capt. Sweeney of the tug said the steering should be done in the last three tiers, which includes libelant's two boats.

One of claimant's witnesses testifies, as does one of libelant's, and it is not disputed, that before the tow left Whitehall the captain of the tug or his representatives, notified at least some, if not all, of the masters of the boats to steer with their rudders in going through the channel. If the libelant did not follow such instructions to steer his boats, and failure to do so was the cause of their going out of the channel and receiving damage, libelant cannot recover.

Capt. Sweeney, who was the only one of the tug's crew of sixteen who was sworn as a witness for claimant, testified that he frequently looked back over the tow, probably using his field glasses, and saw no one steering on any of the boats at any time before it became too dark to see. No other witness was sworn by claimant who was on the tug or tow, and no other testimony appears in the record from which it can be found or inferred that libelant did not steer his boats.

Claimant asserts that from Capt. Sweeney's testimony it should be held that the libelant did not steer his two boats or cause them to be steered. But libelant and his wife testify that they did steer the two boats during the trip through the channel, and they are corroborated by Kiernan, captain of a boat in the tier behind libelant's two boats, which was also next to the last tier. Archambault, captain of one of the boats in the tier ahead of libelant's boats, also sworn, is not sure he saw libelant steer his boats, but did see him pumping. There are no other witnesses on the subject. The preponderance of evidence is with the libelant, and the finding is that the libelant did his duty, followed instructions, and steered his boats.

But there is evidence that there was no attempt to control the tow and keep it within the channel by steering on either of the last two tiers of the tow. Kiernan says that he did not steer his boats and that no one steered in his tier or in the last tier. Capt. Sweeney saw no one steering on any boats, and consequently saw no one steering on the last two tiers of boats, to which his attention would naturally be attracted, as they were the boats on which steering would be effective to keep the tow in the channel. There is no evidence from which it may even be inferred that any one steered on any boat in the last two tiers. The necessary conclusion is that there was no steering on the last two tiers of boats.

[1] There being then no steering on any of the last two tiers of boats, and the claimant being bound by the allegations of its answer that failure to steer was the cause of the rear of the tow, including libelant's boats, swinging out of the channel, which allegations are supported by proof, it must be taken that the failure to steer on the last two tiers was the cause of the damage to libelant's boats.

By his own testimony, the captain of the tug knew there was no steering on the last two tiers of boats. Knowing this, he nevertheless proceeded on his way, and libelant's boats were damaged.

[2, 3] The libelant being free from negligence, the question which confronts the court

is whether or not, under the circumstances here existing, the tug is responsible to libelant for the failure of the masters of the boats in the last two tiers to steer their boats. Counsel have not referred the court to authorities on the question. It may be helpful if we keep in mind the relations of the tug and tow to each other.

It is well settled that the tug is the dominant mind and will of the tow. The Ft. George (C. C. A.) 183 F. 731; The Margaret, 94 U. S. 494, 24 L. Ed. 146. The tug's responsibility should be measured to some extent, at least, by its authority. The libelant as master of two boats in the tow, had no authority over, and could not control, the masters of the other boats in the tow. But the tug, as the dominant mind, had such authority, and, according to the evidence, had the means to exercise such authority, but failed to do so. Instead of exercising her authority, the tug proceeded on with the tow without the steering which might have safeguarded the tow, and with full knowledge on the part of the tug captain that such steering was not being done, and the results and damage happened, which might have been expected, except in cases of extreme good fortune. The circumstances imposed upon the tug a degree of care commensurate with the dangers involved in the passage of the channel. It was evident to one skilled in navigation, that, if the tow was not steered or controlled in some manner, some or all of the rear boats might go out of the channel and receive injuries.

Under such circumstances as existed here, the tug could not satisfy its duty or exercise the degree of prudent seamanship and skill required to meet the dangers which might reasonably be anticipated, by merely notifying the captains of the tow that they should steer. The tug owed a duty to various members of the tow, not only to give instructions, but to see that its instructions were obeyed. The tug should be responsible for failure to do so. This view not only accords with reason, but is supported by authority. In The Jane McCrea (D. C.) 121 F. 932, the headnote says:

"A vessel which undertakes a towage service is liable for reasonable care of the tow, and that reasonable care is measured by the dangers and hazards to which the tow is exposed, which it is the duty of the master of the tug to know and to guard against not only by giving proper instructions for the management of the tow, but by watching her, when in a dangerous locality, to see that his directions are obeyed."

In The Allegheny, 252 F. 6, the Circuit Court of Appeals, Third Circuit, said:

"It is not sufficient for the master of a towing tug to see that his tow is properly made up; but it is his duty to keep it under constant observation, and to see that it remains in proper condition." (Headnote.)

In Peace River P. M. Co. v. Mulqueen, 285 F. 102, the Circuit Court of Appeals in the First Circuit said:

"The owner of these barges, in offering them for such a towage, acquiesced in subjecting them to only the hazards which could not be avoided by reasonable care and skill on the part of the tug, and the tug contracted to exercise that degree of prudent seamanship and skill required to meet the dangers which might reasonably be anticipated."

See, also, The N. & W. No. 2 (D. C.) 102 F. 921; The Margaret, 94 U. S. 494, 24 L. Ed. 146.

The case of The Robert H. Cook (D. C.) 207 F. 626, in this district, decided by the late learned Judge Ray, arose out of damage received by a canal boat while being towed by the same tug complained against here, in the very same channel, and almost at the same places. That case laid down the rule that, since failure to steer the boats in the tow was the cause of some of the boats in the tow going out of the channel and being damaged, it was the duty of the master of the tug to instruct the captains of the boats in the tow to steer their boats while going through the channel.

[4] In the case at bar, the instructions were given but not followed, and this decision goes a step further than in the earlier case, and holds that it is the duty of the master of the tug not only to give such instructions, but also to see that such instructions are obeyed.

The cause of the damage being the failure of the tug to perform its duty, the tug is liable for the resulting damage.

Decrees may be entered accordingly.