## THE FRED'K LENNIG.

### Petition of W. E. HEDGER & CO., Inc.
### No. 95.

Circuit Court of Appeals, Second Circuit.
Dec. 8, 1930.

Macklin, Brown, Lenahan & Speer and Single & Single, all of New York City (Horace L. Cheyney, William J. Mahar, and Edmund F. Lamb, all of New York City, of counsel), for damage claimant.

William F. Purdy (John E. Purdy, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

April 19, 1927, the steam tug Fred'k Lennig was engaged in towing four barges westward on the Erie Canal, bound for Buffalo. When approaching Lock 9, in the Mohawk river, the current was running eastward, the tow arranged in tandem on two hawsers about 75 feet from the stern of the Lennig to the bow of the head boat; the barges were made fast as close to each other as was possible. As the Lennig and her tow neared the approach wall, a signal was given to the engine room to change the speed of the tug from full speed ahead to stop and reverse in order to shorten the towing hawsers before entering the lock. Before the signals were answered, the current, which flows over the dam near the lock and then runs in a counter clockwise direction crossing the entrance to the lock, caught the barges and carried them over into collision with the bullnose of the lock, damaging three of the barges. When the current caused the barges to shear, the steersman on the barges put his wheel hard aport to head the barges into the lock, but this was of no avail. The barges were equipped with steering wheels on the bow of the second and fourth boat. While the barge was hard to port before she struck the abutment, one of the steering cables slipped off the drum of the wheel. The engine of the tug stuck on center, stalling it for a short time; it was unable to continue the towage or to reverse for a period of about sixty seconds.

The court below granted a limitation of liability, but exonerated the tug, holding that the collision was due to the negligence of the barges, and that the stalling of the engine by its becoming stuck on center was an inevitable accident.

The circumstances of the occurrence of this collision presumptively established negligence on the part of the tug. The Clarence P. Howland, 16 F.(2d) 25 (C. C. A. 2); The Enterprise, 228 F. 131 (Dist. Ct. Conn.); In re Reichert Towing Line, 251 F. 214 (C. C. A. 2); The W. G. Mason, 142 F. 915 (C. C. A. 2). The Lennig stopped to shorten her hawser in waters which were subject to an eddy which formed near the lock. It was at a movable dam, and, when the water is high, a strong eddy flows easterly and to the north shore, across the approach to the lock, backing up against the north shore, in a westerly direction and again crossing the approach to the lock in a southerly direction and practically at right angles with the lock. The tug and its tow were obliged to cross this current twice to enter the lock. As the current is first felt on the port side of the westbound tow and as the tug draws closer to the lock, the same eddy is felt on the starboard side. The Lennig continued ahead with full speed until she was within 300 feet of the approach wall. Signals to stop and reverse

were then given. The barges carried their headway, and were caught in a current, whereupon they took a sharp sheer to port. This sheer may have occurred even if the engines of the tug had responded to the reverse signal. The tug, proceeding would have had a sudden strain on its hawser, and, after the engine had been put in reverse, the tug would still have headway some distance before acquiring sternway. So, too, the barges would have headway even though the tug responded to the reverse signals. The one way the tug could have stopped the headway of the barges was to back down against them. This would have damaged the bow of the head barge. If the tug's engines had responded to the reverse signal and the headway of the barges had been stopped, the strain on the barges would have ceased, and the barges would have been caught in the current before the tug was again able to get a strain on the hawser. The barges sheered as soon as the tug's engines were stopped, and it is apparent that this was an improper place to stop to shorten the hawser. The custom of shortening hawsers so close to the particular wall, under the circumstances, if it existed, was a dangerous one and offers no excuse. The William Guinan Howard, 252 F. 85 (C. C. A. 2).

Nor is the tug excused because the cables slipped off the drum of the wheel on the barge. The steering cable did not let go until the barges were in the eddy and after the tug had become disabled. Failure of the barges to control their navigation after the engine became disabled did not excuse the tug. The court below assumed it would, referring to The J. P. Donaldson, 167 U. S. 599, 17 S. Ct. 951, 42 L. Ed. 292. There the towage was on the Great Lakes with another type of vessel equipped with sails and with a wheel and rudder. An attempt was made there by the barge owners to have the tug contribute to the damage to the barges in general average because the tug abandoned them during a storm in order to save herself. In tows of this character, when in the canal, the tug is responsible for the tow. The Robert H. Cook, 26 F.(2d) 710 (D. C. N. D. N. Y.).

Moreover, the barges could not have avoided the collision with the bullnose here under the circumstances. The tow was hooked up close together, small lines were run through sheaves from the stern of one boat and the bow of the other, and were wound up on the drum of the wheel on the bow of the second boat. The boats were steered by tightening one or the other of these lines, thus pulling the corners of the boats together. See In re O'Donnell, 34 F.(2d) 925 (C. C. A. 2). When the strain on the towing hawser had ceased and the barges were caught in the current, the steering apparatus was of little assistance in the endeavor to break the sheer. Moreover, it appears that, after the Lennig's engines failed to respond, the barge's wheel was put to port and the sheer could not be broken. It was after that, when the tug's engines were again under control and before the barges struck the bullnose, that the order of full speed ahead was given, thus putting all the strain on the towing hawser. This sudden strain on the port hawser is sufficient to explain the slip of the port steering wheel.

It therefore appearing that the primary and direct cause of the damage to the barges was the fault of the tug in endeavoring to shorten the hawsers in these dangerous waters, at Lock No. 9, we need not consider the effect of the engine stopping on center, for that does not excuse this negligent act for which we think the tug is responsible.

Decree reversed.