### In re W. E. HEDGER CO., Inc.
### No. 377.

Circuit Court of Appeals, Second Circuit.
June 13, 1932.

William F. Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for appellant.

Single & Single and Macklin, Brown, Lenahan & Speer, all of New York City (Horace L. Cheyney and Thomas H. Middleton, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The steam tug Frederick Lennig, while towing four loaded barges from New York to Buffalo, brought its tow into collision with Lock 9 on the New York State Barge Canal, resulting in damage to certain of the barges. They were owned by the damage claimant, Foster. This court, by its decision reported in 45 F.(2d) 691, held that the accident occurred through negligence in the operation of the tug, but granted the appellant the right to limit its liability. Thereafter a hearing was had before a special commissioner appointed to take proof as to the value of the appellant's interest in the tug and her pending freight. He found the value of the tug to be $2,100, and the value of the petitioner's interest in her freight then pending to be $3,640.96. These findings the District Court confirmed and carried into its final decree.

This appeal questions only the amount of freight to be surrendered. Two contentions are presented: First, that the total freight collected by the appellant for the voyage from New York to Buffalo was earned by the combined services of tug and barges, and that only 55 per cent. thereof should be allotted as the tug's share; second, that from the gross freight earned by the tug should be deducted the expense incurred after the accident in operating the tug to complete the voyage to Buffalo and thus earn the freight. These contentions will be considered seriatim.

The privilege of limiting liability is granted the owner of an offending vessel on condition that he surrender the value of his interest in "such vessel, and her freight then pending." Rev. St. § 4283, 46 USCA § 183. In the case of a flotilla consisting of tug and tow, the vessel required to be surrendered will, in some circumstances, be only the tug, as in Liverpool, etc., Nav. Co. v. Brooklyn Eastern Dist. Terminal, 251 U. S. 48, 40 S. Ct. 66, 64 L. Ed. 130, while in other circumstances it will be the whole flotilla. The Columbia, 73 F. 226 (C. C. A. 9), approved in Sacramento Nav. Co. v. Salz, 273 U. S. 326, 332, 47 S. Ct. 368, 71 L. Ed. 663. In the case at bar, it is conceded that the tug alone constitutes the vessel to be surrendered. The petitioner had no interest in the barges. When a tug and tow together comprise the instrument of transportation earning freight

but the tug alone is the vessel to be surrendered, what is "such vessel's" freight then pending? The question is not free from difficulty, but no attempt to make a comprehensive answer is required by the present litigation. This case must turn on a matter of proof. The petitioner in a limitation proceeding has the burden of proving compliance with the conditions which entitle him to limit liability. The Rambler, 290 F. 791, 792 (C. C. A. 2). He must show the value of his interest in the vessel and her pending freight. When a tug owner proves that he collected a certain sum as freight and that he had no interest in the cargo-carrying barges, we think the sum collected necessarily measures his interest in freight earned by the tug, in the absence of a showing that others are entitled to share in the freight he collected. Such a showing the appellant attempted to make, but the court below thought it insufficient, and with this we agree.

The contract of affreightment is not in evidence, but it appears from the testimony that the entire freight was prepaid to the appellant, and that the latter apportioned it upon its books in the ratio of 55 per cent. to the tug and 45 per cent. to the barges. Actually the barges did not participate in the freight. They were under charter on a per diem hire to Hedger Transportation Company, which was a different corporation from the appellant although the same individuals were officers and directors of both. The transportation company was described as a canal operating company, and the W. E. Hedger Company as freight forwarders and brokers owning more or less equipment, including the tug Frederick Lennig. Nothing further is shown as to the relation between these corporations. There is no evidence that any part of the freight collected by the appellant was ever paid to the charterer of the barges or that the latter was legally entitled to any of it. The apportionment on the books of appellant was an arbitrary division for bookkeeping purposes, according to the testimony of Mr. Pierce, its vice president. It is true Mr. Pierce also testified that an apportionment of freights between tug and barges in the ratio stated was the usual and customary practice in canal business, but this testimony must be understood as referring to a custom based upon contractual relations between tug owner and barge owner, such as appeared in Re O'Donnell, 26 F.(2d) 334 (C. C. A. 2). If a contract to share freights were proved but the terms of the contract left uncertain, the basis of division, the custom to which Mr.

Pierce testified, might be read into the contract to make definite its meaning. But no contract relations between the appellant and the transport company was proved in the case at bar; so far as appears, the appellant kept, and was entitled to keep, the entire freight, and made the division on its books "arbitrarily" and "just as a matter of bookkeeping." Under the circumstances disclosed by this record, we find no evidence that would justify a holding that appellant's interest in the freight collected was less than the full amount thereof.

Passing now to the second contention, it appears that because of high water in the canal 18¼ days were required to complete the voyage to Buffalo from the place of the collision. The appellant estimates the cost of operating its tug at $125 per day, and seeks to deduct some $2,200 from the gross freight. The decision of Judge Lacombe in The Jose E. More, 37 F. 122 (C. C. N. Y.), lends support to the argument that expenses of operation after collision may be deducted from the gross freight earned. But, in the light of the Supreme Court's decisions, we think that Judge Lacombe's opinion does not represent the law. Nor did it ever represent a unanimous judicial opinion. An earlier decision by Judge Nelson was to the contrary. The Abbie C. Stubbs, 28 F. 719 (D. C. Mass.). Judge Nelson relied upon The City of Norwich, 118 U. S. 468, 6 S. Ct. 1150, 30 L. Ed. 134. There Mr. Justice Bradley propounded the question, At what time ought the value of the vessel and her pending freight to be taken, in fixing the amount of her owner's liability? and, after a careful analysis of the statute, answered that "it must be at the termination of the 'voyage' that the vessel is to be appraised, and the freight (if any be earned) is to be added to the account. * * *" Page 491 of 118 U. S., 6 S. Ct. 1150, 1156. And the opinion in The Main v. Williams, 152 U. S. 122, 132, 14 S. Ct. 486, 38 L. Ed. 381, declares that it was not intended to limit the recovery to the uncollected freight, or such as had not been completely earned at the time of the disaster. See, also, The Jane Grey, 99 F. 582, 592 (D. C. Wash.); The H. F. Dimock, 186 F. 662, 663 (S. D. D. C. N. Y.); The Steel Inventor, 36 F.(2d) 399, 400 (S. D. D. C. N. Y.). These authorities make it clear that the freight to be surrendered is the gross freight earned without deduction of the expenses of earning it.

Decree affirmed.